A97A0960. WALKER et al. v. VIRTUAL PACKAGING, LLC et al.
(493 SE2d 551)

RUFFIN, Judge.

Paul Walker and other plaintiffs (collectively "Walker Plaintiffs") sued The Color Studio, LLC ("TCS"), Virtual Packaging, LLC ("Virtual"), and Thomas Sucher to dissolve TCS and to recover damages for breach of contract and breach of fiduciary duty. The defendants moved for partial summary judgment on the ground that the Walker Plaintiffs could not recover damages for breaches of contractual obligations that exclusively benefited TCS. The trial court granted the defendants' motion for summary judgment, and the Walker Plaintiffs appeal. For reasons which follow, we affirm in part and reverse in part.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." (Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review is de novo. *Bandy v. Mills*, 216 Ga. App. 407 (454 SE2d 610) (1995).

Viewed in the light most favorable to the Walker Plaintiffs, the record shows that they are the original individual members of TCS, which was a Georgia limited liability company. Defendant Virtual purchased a 50 percent membership interest in TCS from the Walker Plaintiffs and entered into an agreement ("Members' Agreement") regarding the reconstituted limited liability company. The Members' Agreement included a non-competition covenant, which provided that TCS's members could not "solicit, contact, call upon, communicate with or attempt to communicate with any employee of [TCS], with a view to soliciting said employee to either leave [TCS's] employment or to become employed by [TCS's competition]."

TCS's members also signed an operating agreement ("Operating Agreement") controlling the management and operations of TCS. As part of this agreement, the parties chose defendant Thomas Sucher, a member of Virtual, to manage TCS. The Operating Agreement placed certain limitations on Sucher's authority as manager. For example, under the Operating Agreement, Sucher could not, "without the express consent" of one of the Walker Plaintiffs, Daniel L. Sessions, execute assignments on behalf of TCS.

When disputes between the Walker Plaintiffs and the defendants arose concerning TCS's operations, it became impossible for TCS's members to continue the company in conformity with the Operating Agreement. The Walker Plaintiffs therefore sued to dissolve TCS and to recover damages for breach of contract. As the basis for their breach of contract claim, the Walker Plaintiffs asserted that Virtual and Sucher solicited TCS's employees in violation of the non-competition covenant in the Members' Agreement. They also alleged breach of fiduciary duty as follows: "Defendant Sucher individually and on behalf of Defendant Virtual breached the non-compete agreement regarding solicitation of [TCS] employees, breached his fiduciary duty to plaintiffs, breached paragraph 3 of the Operating Agreement and has otherwise violated the letter and spirit of the agreements among the parties." Afterwards, the Walker Plaintiffs filed amended complaints alleging that "Defendants breached their fiduciary duty to Plaintiffs to Plaintiffs' damage." The factual basis of the claim for breach of fiduciary duty is unclear from the record.

The parties subsequently entered a consent order ("Consent Order") dissolving TCS and reserving for resolution the issues involving breach of the non-competition covenant, breach of fiduciary duty, and an accounting in connection with the dissolution of TCS. Thereafter, the defendants moved for summary judgment on the Walker Plaintiffs' claim for breach of the non-competition covenant, contending that no issue of damages remained after the dissolution of TCS. The defendants argued that the Walker Plaintiffs were not beneficiaries of the contract, and "[i]n order for a third party to have stand-

ing to enforce the contract it must clearly appear from the contract that it was intended for his or her benefit." The Walker Plaintiffs responded and also filed a cross-motion for summary judgment. They argued that "*if* [TCS] were to still exist, any claim . . . would be in the form of a derivative action[,]" but when TCS was dissolved, it assigned its causes of actions for damages to the individual members of the company. (Emphasis supplied.)

The trial court granted the defendants' motion for summary judgment and denied the Walker Plaintiffs' cross-motion. In its order, the trial court found as follows: (1) the Walker Plaintiffs were claiming damages derivatively, as former members of TCS, as a result of the alleged breach of the Members' Agreement by Virtual and Sucher; (2) the Members' Agreement was for the sole benefit of TCS; (3) the Walker Plaintiffs were not third-party beneficiaries of the Members' Agreement; (4) there is no provision in the Georgia Limited Liability Company Act that would permit a cause of action belonging to a limited liability company under these circumstances to survive the dissolution of the company; and (5) the Walker Plaintiffs provided no evidence that Virtual or Sucher competed with TCS before the court-ordered winding up of the company. The trial court concluded that "since [TCS] could not conduct business [after the dissolution], there was no entity with standing to enforce the [non-competition covenant in the] Members' Agreement."

The Walker Plaintiffs appeal the grant of the defendants' motion for summary judgment, asserting that a material issue of fact remains concerning their claim for breach of the non-competition covenant. In addition, the Walker Plaintiffs allege error because the trial court did not consider their claim for breach of fiduciary duty when ruling on the summary judgment motions.

1. We first address the Walker Plaintiffs' argument that the trial court erred in not considering the breach of fiduciary duty counts of the amended complaints in its ruling. The trial court's order does not refer to the Walker Plaintiffs' claim for breach of fiduciary duty. Therefore, the trial court implicitly ruled on and granted summary judgment on this issue by not specifically reserving that claim when the court granted the defendants' summary judgment motion. Walker and Virtual neither raised the issue of breach of fiduciary duty in their respective motions, nor later amended their motions to include such a claim. Moreover, our review of the record shows that neither party provided the trial court with a statement of undisputed material facts regarding the claim for breach of fiduciary duty. In addition, on appeal, the defendants do not dispute the Walker Plaintiffs' assertion that "the trial court erred in failing to consider the breach of fiduciary duty counts of the Amended Complaints in its ruling." As a result, that issue was not properly raised and the trial

court should not have ruled on it. See *Aycock v. Calk*, 222 Ga. App. 763, 764 (476 SE2d 274) (1996). Accordingly, the trial court's order granting summary judgment to the defendants is reversed to the extent that it includes a ruling on the Walker Plaintiffs' breach of fiduciary duty claims.

2. The Walker Plaintiffs also assert that the trial court erred in ruling on the issue of whether "Virtual or Sucher competed with Color[.]" Like the breach of fiduciary duty claim, that issue was *not* before the trial court. Therefore, we also reverse the trial court's judgment with regard to that ruling. See *Aycock*, supra.

3. We next consider the various standing theories raised by the Walker Plaintiffs and the trial court to determine if they are meritorious. First, the Walker Plaintiffs contend that TCS, in the Consent Order, implicitly assigned to them its right to sue for the breach of the non-competition covenant. To support this contention, the Walker Plaintiffs rely on language in the Consent Order that distributes, pro rata, the assets of TCS to its members and reserves any unresolved disputes left in this civil action after the dissolution of TCS.

Specifically, the Walker Plaintiffs stated their argument in the trial court as follows: "Since the parties expressly reserved this claim unless it was disposed of by the Consent Order and since the Consent Order specifically did not dispose of it and specifically left all undisposed of claims open, the sole remaining issue can only be whether — as a matter of law and independent of the parties expressed agreement — a claim for damages originally belonging to a Limited Liability Company can be distributed pro rata to the members upon dissolution. The claim by TCS against [d]efendants Sucher and Virtual is a 'chose in action' belonging to TCS prior to its dissolution. The question therefore must be whether such a chose in action is distributable to the owners of TCS. Clearly TCS has attempted an assignment by its agreement to assign its property to its owners."

On appeal, the Walker Plaintiffs argue that if the trial court had found that TCS, via the Consent Order, assigned the claim for breach of the non-competition covenant to them, then the trial court would have concluded that they had standing to proceed. Accordingly, the Walker Plaintiffs assert that the trial court erred.

As a general rule, an action on a contract is brought by a party to it. *Reaugh v. Inner Harbour Hosp., Ltd.*, 214 Ga. App. 259, 261 (3) (447 SE2d 617) (1994). Nevertheless, if one of the original contracting parties assigns all of its rights, title and interest in that contract to an assignee, the assignee is the real party in interest. *Allman v. Hope*, 200 Ga. App. 137, 138 (1) (407 SE2d 107) (1991). And, "[e]very action shall be prosecuted in the name of the real party in interest." OCGA § 9-11-17 (a). Moreover, because "a proper consent order may be treated as a binding agreement, enforceable as a con-

tract[,]" *Collins v. Collins*, 148 Ga. App. 103, 105 (2) (250 SE2d 870) (1978), we look to the Consent Order to see if an assignment occurred.

" 'The cardinal rule of [contract] construction is to determine the intention of the parties. But no construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.' [Cit.]" *Bradley v. British Fitting Group*, 221 Ga. App. 621, 623 (3) (472 SE2d 146) (1996). Contrary to the Walker Plaintiffs' argument, the record shows that TCS did not assign a chose in action to the Walker Plaintiffs in the Consent Order because TCS did not comply with the terms of the Operating Agreement regarding assignments. According to the Operating Agreement, TCS's manager, Sucher, could not, *"without the express consent"* of one of the Walker Plaintiffs, Daniel L. Sessions, execute assignments on behalf of TCS. (Emphasis supplied.) Neither the Consent Order nor any other part of the record shows such express consent.

Further, the Consent Order was not a novation of the Operating Agreement or of the Members' Agreement because the Walker Plaintiffs and Sucher did not extinguish those agreements in the Consent Order. See *Beasley v. Agricredit Acceptance Corp.*, 224 Ga. App. 372, 373-374 (1) (480 SE2d 257) (1997). TCS continued to operate pursuant to the Members' Agreement and the Operating Agreement. The Walker Plaintiffs and Virtual do not dispute that Sucher continued to act as the manager of TCS until its dissolution — seven days after the Consent Order was filed. The Members' Agreement and Operating Agreement are the only documents in the record that gave Sucher this authority. Consequently, it is obvious that the Consent Order did not extinguish the earlier agreements. TCS therefore did not assign a chose in action to the Walker Plaintiffs. Accordingly, we affirm the trial court's decision that no assignment occurred.

4. The Walker Plaintiffs further claim that the trial court erred in finding that the Walker Plaintiffs did not have standing to bring their claim for breach of the non-competition covenant because they were not third-party beneficiaries of the Members' Agreement. Although we agree with the trial court's finding that the Walker Plaintiffs were not third-party beneficiaries, we disagree with the conclusion that the Walker Plaintiffs therefore did not have standing to sue for breach of the non-competition covenant. The defendants do not dispute that the Walker Plaintiffs were parties to the Members' Agreement, which contains the non-competition covenant at issue. Each of the Walker Plaintiffs signed the agreement on behalf of TCS and "individually." Accordingly, the Walker Plaintiffs were not "third parties" at all, they were parties to the contract at issue. The trial court therefore erred in concluding, based on a third-party benefici-

ary analysis, that the Walker Plaintiffs could not bring a claim for the breach of the non-competition covenant in the Members' Agreement. As a result, we also reverse the trial court's grant of the defendants' summary judgment motion on this basis.

5. Finally, we address the Walker Plaintiffs' argument that "the trial court erred by finding that [their] claims were derivative claims." The trial court found that the "[Walker] Plaintiffs in this action are claiming damages derivatively (as former members of [TCS]) as a result of the alleged breach by Virtual and Sucher of the Agreement." In their response to the defendants' summary judgment motion, however, the Walker Plaintiffs specifically stated that they were not pursuing a derivative action. Moreover, the defendants never raised the issue of whether the Walker Plaintiffs' claims were derivative in nature. We interpret the trial court's order to mean that the Walker Plaintiffs could not have maintained a direct action against the defendants. The distinction between a derivative action and a direct action rests upon the party being directly injured by the alleged wrongdoing. *Phoenix Airline Svcs. v. Metro Airlines,* 260 Ga. 584, 586 (1) (397 SE2d 699) (1990). A trial court must determine whether the claims are derivative claims or direct claims. Id. at 585. Therefore, while the trial court properly raised this issue, sua sponte, the court could not decide this issue without giving the parties an opportunity to be heard.

"Although our law concerning motions for summary judgment allows a trial court to grant, sua sponte, a summary judgment, a trial court's authority to do so is not unlimited. The grant of summary judgment must be proper in all other respects. This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment. The crucial point is to insure that the party against whom summary judgment is sought has had a *full and final opportunity* to meet and attempt to controvert the assertions against him." (Citations and punctuation omitted; emphasis in original.) *Aycock,* supra at 764.

The record does not support the conclusion that the Walker Plaintiffs had a full and final opportunity to controvert the trial court's findings that their claims were derivative. For example, neither party cited legal authority or presented any legal analysis on the issue of whether the plaintiffs were "claiming damages derivatively[.]" In addition, no facts, undisputed or otherwise, were alleged by either party to support or contest that finding by the trial court. We therefore also reverse the trial court's ruling on this issue.

*Judgment affirmed in part and reversed in part and case*

*remanded. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED OCTOBER 15, 1997 —
RECONSIDERATION DENIED NOVEMBER 4, 1997 —

*John T. Longino*, for appellants.
*Mitchell & Mitchell, James H. Bisson III, Witt, Gather & Whitaker, Jonathan M. Minnen*, for appellees.