A06A0293, A06A0470. LOVELL v. THOMAS et al.; and vice versa.
(632 SE2d 456)

BARNES, Judge.

Michael Thomas, Anita Thomas, and The Bank Network, Inc. (TBN) sued Virgil Lovell for breach of contract, the return of attorney fees withheld, and other counts involving the sale of stock that Lovell held as collateral for a promissory note. Lovell answered, denying liability and counterclaiming for attorney fees under the contract if he prevailed. The case was tried before a jury, and at the close of evidence, the trial court granted a directed verdict to the plaintiffs on their claim for the return of attorney fees Lovell retained when he sold the collateral. The jury returned a defense verdict on the remaining counts, and the trial court issued a judgment awarding the plaintiffs $67,722. Lovell appealed, contending that the trial court

---

erred in granting the plaintiffs a directed verdict on the fees. The plaintiffs cross-appealed, contending that the trial court erred in not advising the jury that it had granted the directed verdict, and erred in its calculation of the amount it awarded them. For the reasons that follow, we reverse the grant of a directed verdict in Case No. A06A0293, and dismiss as moot Case No. A06A0470.

In January 2001, Lovell borrowed $615,803 from Regions Bank, which he then loaned to the Thomases. Lovell and the Thomases signed a loan agreement, and the Thomases secured the debt with a promissory note which provided that they would pay interest quarterly and repay the principal in April 2002. They used the money to purchase 500,000 preferred stock shares in B & I Lending, LLC, of which Mr. Thomas was already a member. The Thomases then pledged those shares in B & I as collateral for the note. TBN, a closely-held company owned by Michael Thomas and his brother, signed a guaranty and pledged an additional one million shares in B & I as additional collateral for the loan. Regions Bank took possession of the pledged shares of stock.

In May 2001, B & I merged with Bridgeview Bancorp, Inc. The Thomases' B & I shares were exchanged for 1,345 Bridgeview common shares and TBN's B & I shares were exchanged for 1,048 common shares. These Bridgeview shares were substituted as collateral for the Thomases' debt, and again were held by Regions Bank.

The Thomases defaulted on the note by failing to pay the principal amount in April 2002. Lovell ultimately sold to Bridgeview all of the Bridgeview stock he held as collateral for the promissory note in September 2002 for $554.72 per share, for a total of $1,327,445. He kept $751,895 to apply to the outstanding principal, interest, late fees, expenses, and attorney fees, and returned the rest of the money, $575,550, to the Thomases. Lovell allocated $98,679 of the amount he retained to expenses and attorney fees.

The Thomases and TBN sued Lovell, alleging that he sold the stock for a commercially unreasonable price and sold more stock than he needed to pay off the debt. They also alleged that, among other things, Lovell was not entitled to retain any attorney fees because the promissory note required him to institute legal proceedings before becoming entitled to fees, and because he failed to comply substantially with the requirements of OCGA § 13-1-11. That Code section provides that a lender may enforce an obligation in a note or other evidence of indebtedness to pay attorney fees if he collects the money using an attorney and notifies the maker in writing of his intention to seek fees unless the principal and interest are paid within ten days. At trial, after the parties rested, the trial court granted the Thomases' motion for a directed verdict on their claim seeking the return of the $98,679 in fees and expenses, and the jury returned a defense verdict

to Lovell on the remaining claims. The trial court subsequently entered judgment for the Thomases for $67,722, which it calculated was the amount Lovell withheld for fees, as opposed to costs.

### Case No. A06A0293

1. Lovell contends on appeal that the trial court erred in directing a verdict against him on the Thomases' claim for a return of the attorney fees he withheld from the collateral sale proceeds. The court held that the parties' agreement provided that Lovell was entitled to collect attorney fees only if he brought suit first. The court further held that, under OCGA § 13-1-11, Lovell was entitled to attorney fees only if the act of redeeming the collateral involved "some kind of lawyer activity, such as a foreclosure or some other act than as provided in the Security Agreement itself." Finally, the trial court held that Lovell could not collect attorney fees because he presented no evidence that he had given proper notice as required by OCGA § 13-1-11.

A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a particular verdict. On appeal, we review the evidence de novo and uphold the grant of a directed verdict only if all of the evidence demands it. *Withington v. Valuation Group*, 249 Ga. App. 8, 11 (547 SE2d 594) (2001).

(a) We first consider whether the trial court properly construed the contract between the parties to conclude that Lovell was entitled to attorney fees only if he filed suit against his debtors or guarantor. In this State

> the construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. (Cit.)

(Citation omitted.) *Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999). The existence or nonexistence of an ambiguity is a question of law for the court. *Southeast*

*Atlantic Cargo Operators v. First State Ins. Co.*, 197 Ga. App. 371, 372 (398 SE2d 264) (1990). If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2. Id.

The five documents comprising the parties' agreement have different attorney fees provisions. For example, the loan agreement provided:

> Borrower agrees to pay all out-of-pocket costs and expenses of Lender, including court costs and reasonable attorneys' fees in an amount not less than fifteen percent (15%) of the principal plus accrued interest in connection with the enforcement of any provision of this Agreement, the Promissory Note, or the Stock Pledge Agreement, *whether or not there is a lawsuit. . . .*

(Emphasis supplied.) The promissory note provided:

> In the event that legal proceedings are instituted to collect any amount due under this Note, Maker hereby agrees to pay, in addition to the unpaid principal and interest due under this Note, all costs and expenses of such proceedings, including reasonable attorney fees in an amount not less than fifteen percent (15%) of the sum so collected.

TBN's guaranty provided that TBN "agrees to pay Lender all expenses (including reasonable attorney fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, to enforce this Guaranty." Finally, the two stock pledge agreements provided that, in the event of default, Lovell was entitled to sell the pledged collateral and apply the proceeds "first, to the reasonable costs, expenses, and attorney fees incurred by Pledgee for collection and acquisition, completion, protection, removal, sale and delivery of the Collateral." The stock pledge agreements also provide that "[i]f either party commences an action against the other party in connection with any dispute or matter arising under this Agreement, the prevailing party shall be entitled to recover its attorney fees and related expenses in reasonable amounts." Finally, both pledge agreements state that "[a]ll of Pledgee's rights and remedies, with the evidence by [sic] this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently."

While the Thomases argue that the loan agreement was superseded by the promissory note, stock pledges, and guarantee, the

documents themselves do not support that argument. The loan agreement itself states that "this Agreement *and the Promissory Note,* when issued and delivered for value received, will constitute the legal, valid and binding obligation of the Borrower in accordance with its terms." (Emphasis supplied.) It states that no remedy provided in the agreement "is intended to be exclusive of any other remedy, each remedy being cumulative." Further, the attorney fee provision in the loan agreement specifically directs the Thomases to pay Lovell "not less than fifteen percent of the principal plus accrued interest in connection with the enforcement of any provisions of *this Agreement, the Promissory Note, or the Stock Pledge Agreement,* whether or not there is a lawsuit." (Emphasis supplied.) Finally, the stock pledge agreements each state that "[t]his Agreement may be executed in any number of counterparts, each of which shall be an original and all of which when taken together constitute a single document."

> When an agreement consists of multiple documents that are executed at the same time and during the course of a single transaction, those documents should be read together. Thus, the documents here that were executed contemporaneously must be construed together. Moreover, a contract must be interpreted to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable or having no effect. And, one of the most fundamental principles of construction is that a court should, if possible, construe a contract so as not to render any of its provisions meaningless.

(Citations and footnotes omitted.) *Sofran Peachtree City v. Peachtree City Holdings,* 250 Ga. App. 46, 50 (550 SE2d 429) (2001).

The documents here were signed concurrently, and constitute parts of the whole; otherwise, the loan agreement would be meaningless. Regardless of whether the note's reference to collecting fees when "legal proceedings are instituted" means a lawsuit must be filed to obtain fees under the note, the loan agreement clearly entitles Lovell to attorney fees if the Thomases default on the loan "whether or not there is a lawsuit," and the Thomases admit they defaulted on the loan. Therefore the trial court erred in concluding that the loan documents required Lovell to file suit before he was entitled to collect attorney fees.

(b) The trial court also held that under OCGA § 13-1-11, Lovell was entitled to attorney fees only if redeeming the collateral involved "some kind of lawyer activity, such as a foreclosure or some other act than as provided in the Security Agreement itself," citing *David v. ITT Diversified Credit Corp.,* 174 Ga. App. 910 (332 SE2d 8) (1985).

The Code section itself only directs that this kind of obligation to pay attorney fees is valid "if such note or other evidence of indebtedness is collected by or through an attorney after maturity." OCGA § 13-1-11 (a). The elements required to recover attorney fees incurred in connection with the collection of indebtedness include proper notice, a matured debt, a contractual provision obligating the payment of attorney fees and collection by an attorney. *Gen. Elec. Credit Corp &c. v. Brooks*, 242 Ga. 109, 117 (249 SE2d 596) (1978).

This court in *David v. ITT Diversified Credit Corp.*, supra, 174 Ga. App. 910, did not hold that suit had to be filed before attorney fees can be collected. In that case, the lender had in place an agreement obliging the manufacturer of the collateral to repurchase it upon the lender's request. The borrower defaulted and the lender invoked its option pursuant to this repurchase agreement. This court held that this portion of the obligation was not collected " 'by and through an attorney after maturity' " within the meaning of OCGA § 13-1-11. Id. at 912 (2). Lovell had no such automatic option to invoke when the Thomases defaulted on their loan; instead he had to find a willing buyer for the collateral, which was stock in a very closely held corporation that was not traded publicly. "The true inquiry is whether the attorney played a role in collecting the debt. [Cit.] If he or she did as in this case, the creditor is entitled to enforce the attorney fee obligation." *Kenemer v. First Nat. Bank of Atlanta*, 210 Ga. App. 389, 390 (436 SE2d 96) (1993). A review of the trial transcript reveals that attorneys "played a role" in selling the collateral and paying off the debt. Therefore the trial court erred in concluding that Lovell was not entitled to attorney fees simply for redeeming the collateral.

(c) Finally, Lovell contends that the trial court erred in finding that he had not produced sufficient evidence of notice pursuant to OCGA § 13-1-11 to submit the issue to a jury. Under that Code section, Lovell had to give the Thomases notice of his intention to seek attorney fees if they did not pay the principal and interest due within ten days.

On the morning of trial, Lovell's attorney told the court and his opposing counsel that he had discovered the night before a letter written by his partner to the Thomases on Lovell's behalf that contained the notice language of OCGA § 13-1-11. The Thomases objected to the admission of this evidence, arguing that it was not listed in the consolidated pre-trial order, it was a total surprise, and it contradicted Lovell's admission that he had only used a different law firm in his attempts to collect the debt. The trial court found as a matter of fact that Lovell's counsel had not intentionally withheld evidence of the letter, had just discovered it, and had notified opposing counsel as soon as possible, and opposing counsel agreed. The

trial court allowed Lovell to withdraw his admission in judicio that only one law firm performed his collections work. Thus, counsel was permitted to raise the issue of the letter before the jury.

In considering whether to admit the letter into evidence or not, the court granted Lovell's motion to amend his list of exhibits in the pre-trial order, but also held that the letter would not be admitted into evidence unless the Thomases admitted receiving it. The court allowed Lovell to ask the Thomases about the letter outside of the jury's presence. Both of them denied having seen it, and did not recall seeing a notice in their mail that they had a certified letter waiting at the post office for pickup.

Lovell proffered evidence that his attorney would testify that he wrote the July 31, 2002 letter, gave it to his administrative assistant, and directed her to mail it first class and by certified mail to each of the Thomases and to TBN. He also proffered that the administrative assistant would testify that she received the letter from Lovell's attorney after he signed it, placed one copy each into three first class mail envelopes and one copy each into three certified mail envelopes, and delivered all six envelopes to the law firm's mail room. She would also testify that the firm's regular course of business, custom, and practice is that the mail room employees would affix postage and certified mail receipts to the envelopes and deliver them to the post office. None of the first class letters were returned, and two of the certified mail letters were returned as "unclaimed." The third certified letter was not returned, but the post office did not return the receipt either.

The trial court also let Lovell ask Mr. Thomas in front of the jury whether he had received the July 31, 2002 letter, notifying him of Lovell's intent to dispose of collateral and enforce the note's attorney fee provision. Thomas told the jury he did not receive the letter, and did not recall seeing a notification that he had certified mail waiting at the post office for pickup. He admitted that the letter was addressed to his home address. Finally, Lovell testified that he received a courtesy copy in the mail of the July 31, 2002 letter addressed to the Thomases and to TBN.

Lovell claims that evidence the letters were properly mailed creates a presumption that the Thomases received them, sufficient to create a factual issue for the jury. The Thomases respond that any presumption of receipt was fully rebutted by their testimony denying receipt.

The issue here is not, as the Thomases argue, whether the letter should have been excluded from evidence because it was not identified earlier in discovery, or whether it improperly contradicted an admission in judicio. The trial court did not exclude it for these

reasons; other than allowing Lovell to ask Thomas if he had received it, the court excluded evidence of the letter because Thomas said he had not seen it.

Evidence that a letter was written, properly addressed, with correct postage attached, deposited in the United States mail, and never returned to the sender, creates a rebuttable presumption that the recipient received the letters, but testimony by the recipient denying receipt rebuts the presumption and creates an issue of fact for the jury. *Crenshaw v. Ga. Underwriting Assn.*, 202 Ga. App. 610 (1) (414 SE2d 915) (1992); *Vines v. Citizens Trust Bank*, 146 Ga. App. 845, 847-848 (1) (247 SE2d 528) (1978). If the rule were that a recipient had to admit receiving an OCGA § 13-1-11 letter before the issue of proper notice could go to a jury, no debtors could ever be charged attorney fees because all they would have to do would be to deny receiving such notice. The Thomases' testimony that they never received the letters containing the attorney fee language of OCGA § 13-1-11 created a jury question, and the trial court erred in granting a directed verdict to the Thomases and TBN on the issue of whether the Thomases were entitled to the return of attorney fees Lovell retained when he sold the collateral.

*Case No. A06A0470*

2. Because we are reversing the trial court's directed verdict regarding the attorney fees, we need not address the enumerations of error raised by the Thomases, which are unlikely to recur upon retrial. Accordingly, their appeal is dismissed as moot.

*Judgment reversed in Case No. A06A0293. Appeal dismissed as moot in Case No. A06A0470. Andrews, P. J., and Bernes, J., concur.*

DECIDED JUNE 9, 2006.

*Greenberg Traurig, Charles M. Smith, James H. Cox*, for appellant.

*L. Matt Wilson, Dustin R. Thompson*, for appellees.