A08A1529. ACCURATE PRINTERS, INC. et al. v. STARK.
(671 SE2d 228)

BERNES, Judge.

Accurate Printers, Inc. ("API") filed the instant action against Kenneth Stark, alleging that Stark had breached a Non-Competition and Non-Solicitation Agreement ("the Restrictive Covenant"). Stark filed a counterclaim against API and its president, Steven M. Young, alleging that they had tortiously interfered with his business relationship with an employer, a competing printing company. The trial court granted a directed verdict in favor of Stark as to API's claim for breach of the Restrictive Covenant and awarded attorney fees to Stark against API and Young, jointly and severally. The jury returned a verdict in favor of API and Young as to Stark's counterclaim.

On appeal, API and Young contend that the trial court erred in directing a verdict and awarding attorney fees in favor of Stark as to the claim for breach of the Restrictive Covenant.[1] For the reasons that follow, the directed verdict in favor of Stark as to that claim is

---

[1] API and Young also contend that the trial court erred in its interpretation of the

affirmed, but the award of attorney fees in favor of Stark must be reversed.

> A motion for directed verdict may be granted if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a). In reviewing the grant of a directed verdict[,] the evidence must be construed most favorably to the party opposing the motion.

(Citation and punctuation omitted.) *B & C Tire & Battery v. Cooper Tire & Rubber Co.*, 212 Ga. App. 228, 231 (2) (441 SE2d 468) (1994).

The trial evidence in this case showed that Young was the president and sole owner of API, a corporation that operated a printing business. To expand his printing operations, Young sought to purchase the corporate assets and equipment of Oxford Printing, Inc., a corporation owned by Stark. Young acquired ownership of Oxford Printing's assets and equipment for the sum of $275,000 pursuant to an Asset Purchase Agreement executed between Young, individually, Oxford Printing, and Stark. As part of the transaction, Young, Oxford Printing, and Stark also executed the Restrictive Covenant, which contained the following provisions:

> *Agreement Not To Compete.* For a period of five (5) years, commencing on the date this Agreement is executed, [Oxford Printing and Stark] shall not ... either directly or indirectly, as an owner, partner, joint venturer, employee engaged in a managerial or supervisory capacity, independent contractor, consultant, distributor, or shareholder of a corporation ... engage in, establish, invest in, have an interest in, or associate in any fashion with, or perform any professional services on behalf of, a Competing Business within the Area.[2]

---

Restrictive Covenant, in granting Stark's motion to add Young as a counterclaim defendant, and in denying Young's motion to dismiss the counterclaim for lack of venue. But, as explained in Divisions 2 and 4, these additional contentions of error are moot and need not be addressed.

[2] The "Area" subject to the Restrictive Covenant was defined as "the geographic area consisting of a one hundred twenty-five (125) mile radius of the current principal place of business of [API] located at [its designated business address]." The term "Competing Business" was defined as "a business which maintains a place of business or actively solicits business from persons or entities located within the Area ... organized in whatever form and directly engaged in business which is the same as, or substantially the same as, the Business of the Purchaser."

> *Agreement Not To Solicit Customers.* For a period of five (5) years, commencing on the date this Agreement is executed, [Oxford Printing and Stark] shall not . . . either directly or indirectly, as an owner, partner, joint venturer, employee engaged in a managerial or supervisory capacity, independent contractor, consultant, distributor, or shareholder of a corporation . . . (a) solicit on behalf of a Competing Business, any business from any Customer of [Young]; or (b) attempt to solicit on behalf of a Competing Business, any business from any Customer of [Young].

API was not named as a party to the transaction or to any of the executed agreements.

Following the asset purchase transaction, Stark agreed to work for Young and API to help with the business transition. Eventually, however, the relationship between Young and Stark deteriorated. After working at API for over 1½ years, Stark's employment was terminated. Stark then obtained employment with Baxter Printing Company, Inc. ("BPC") in a printing sales position. Young testified that during the course of Stark's employment with BPC, Stark began to compete with API, solicited API's customers, disclosed API's proprietary information, and obtained several printing jobs from former Oxford Printing and API customers.

On June 30, 2003, API filed the instant action against Stark,[3] alleging that Stark had breached the Restrictive Covenant, had tortiously interfered with API's contractual and business relations, and had misappropriated API's trade secrets and proprietary information. Stark filed a counterclaim and successfully added Young as a defendant-in-counterclaim. Stark alleged that API and Young had tortiously interfered with his business relationship with BPC, which resulted in the termination of his employment.

During the trial, Stark moved for a directed verdict on the claim for breach of the Restrictive Covenant, which the trial court granted. Stark also moved for an award of attorney fees as the prevailing party on that claim. The trial court granted Stark attorney fees against both API and Young, jointly and severally. The remaining claims of the lawsuit were submitted for the jury's determination. In its verdict, the jury found in favor of Stark as to API's claims for tortious interference and misappropriation of trade secrets and confidential information. The jury found in favor of API and Young as to Stark's counterclaim. In sum, neither party prevailed on their respective claims under the jury verdict.

---

[3] API also sued BPC, but later voluntarily dismissed BPC from the lawsuit.

1. API first contends that the trial court erred in directing a verdict in favor of Stark as to the claim for breach of the Restrictive Covenant. We discern no error.

API alleged that Stark had breached the terms of the Restrictive Covenant by soliciting business from API's customers. Notwithstanding the allegations, the trial court ruled that API could not prevail on its claim since API was not a party to the contract and the subsequent assignment of the contract rights to API violated the provisions of the Asset Purchase Agreement. We agree.

(a) API was not designated as a party in either the Asset Purchase Agreement, as amended, or the Restrictive Covenant executed for the consummation of the business transaction. Rather, the Asset Purchase Agreement expressed that it was "made and entered into . . . by and between [the] Buyer, Seller, the Stockholders of Seller and [the broker]." In turn, the Asset Purchase Agreement defined the "Buyer" as Young, the "Seller" as Oxford Printing, and the "Stockholders [of Seller]" as Stark. Likewise, the Restrictive Covenant specified that it was entered by and between Young as the "Purchaser," Oxford Printing as the "Seller," and Stark as the "Principal." During his trial testimony, Young conceded that he had entered into the contracts in his individual capacity and that API was not a party to the transaction. Furthermore, counsel for API and Young expressly confirmed that they were not asserting that API was a third party beneficiary to the Restrictive Covenant.

"It is axiomatic that each corporation is a separate entity, distinct and apart from its stockholders." (Punctuation and footnote omitted.) *Levy v. Reiner*, 290 Ga. App. 471, 473 (1) (659 SE2d 848) (2008). Although Young was the owner of API, he chose to enter into the contracts in his individual capacity. API was not a party to the Restrictive Covenant, and thus, it was not entitled to pursue a claim for its breach. See OCGA § 9-2-20 (a); *Kaesemeyer v. Angiogenix, Inc.*, 278 Ga. App. 434, 437 (1) (629 SE2d 22) (2006) ("[T]he doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it.") (citation, punctuation and footnote omitted); *Tanner v. Tanner*, 106 Ga. App. 270, 271 (1) (126 SE2d 838) (1962) ("Actions on contracts must be brought in the name of the person in whom the legal interest in the contract is vested.").

(b) API nonetheless contends that it had standing to pursue the claim for breach of the Restrictive Covenant based upon a purported assignment of the contract rights made by Young to API. But, the Asset Purchase Agreement contained provisions that prohibited the assignment of assets and contract rights unless certain conditions were met.

"Where the assignment is subject to specified conditions, that assignment does not become effective until the happening of the

conditions." *Walter E. Heller & Co. v. Aetna Business Credit*, 158 Ga. App. 249, 258 (280 SE2d 144) (1981) (physical precedent only). See also *Walker v. Virtual Packaging*, 229 Ga. App. 124, 127-128 (3) (493 SE2d 551) (1997).

The Restrictive Covenant provided that the right to pursue remedies for breach of its provisions was "preconditioned upon [Young's] compliance with the terms and obligations set forth in the Asset Purchase Agreement." The Asset Purchase Agreement prohibited assignment of the assets and contract rights unless all funds owed under the promissory note had been paid in full and prior written consent from Stark had been obtained. The Asset Purchase Agreement also contained a provision stating that "[the] Agreement [could] not be assigned by either party . . . without the prior written consent of the other party."

Notwithstanding the above provisions of the contracts, Young assigned the contract rights to API without satisfying any of the conditions for assignment. Young testified that he assigned all of the assets, including the Restrictive Covenant, to API immediately following the closing of the transaction. According to Young, there was no formal written assignment of the contract rights to API, but the assignment was reflected by the claim of the assets in API's corporate tax return for the 2001 fiscal year. The Asset Acquisition Statement of API's 2001 corporate tax return disclosed the transaction and further specified the Restrictive Covenant as an asset transferred to API on September 12, 2001, which was the same date as the transaction between Young, Oxford Printing, and Stark. At that time, however, there was still a balance of $25,000 due under the promissory note, which was to be paid over a 12-month period. This evidence reflected that Young had attempted to assign the contract rights to API without satisfying the condition that required full payment of funds owed under the promissory note.

Moreover, there was no evidence that Young had obtained Stark's prior written consent for the assignment as required by the contract provisions. The provisions of the Asset Purchase Agreement expressly required that Stark's *written* consent be obtained. API and Young have failed to point to any evidence that Stark had given prior written consent to the assignment.[4]

---

[4] Young testified that Stark had agreed to the assignment before the Asset Purchase Agreement was signed. But, because both the Asset Purchase Agreement and the Restrictive Covenant contained merger clauses, this testimony was inadmissible. "In written contracts containing a merger clause, prior or contemporaneous representations that contradict the written contract cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties." (Punctuation and footnote omitted.) *First Data POS v. Willis*, 273 Ga. 792, 794-795 (2) (546 SE2d 781) (2001). See also *Forest Commodity Corp. v. Lone Star Indus.*, 255 Ga. App. 244, 247 (1) (564 SE2d 755) (2002). Even if we were

API nonetheless argues that Stark waived the requirement of prior written consent to the assignment. "[T]he law will not infer the waiver of an important [contract] right . . . unless the waiver is clear and unmistakable." *Croxton v. MSC Holding*, 227 Ga. App. 179, 183 (3) (489 SE2d 77) (1997). See also *Eckerd Corp. v. Alterman Properties*, 264 Ga. App. 72, 75 (1) (589 SE2d 660) (2003) ("[T]here is no waiver unless [the party's] acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible.").

In support of its claims of waiver, API points to trial evidence that Stark failed to object to the use of the equipment at API's office, to Young's sale of one piece of equipment to a third party, and to Young's tender of API checks in payment of the promissory note. But, such evidence was insufficient to show that Stark had notice that an assignment of the assets and the Restrictive Covenant was intended and had occurred.[5] Stark was aware that API was a business owned by Young's family. Stark testified that Young had stated that he would render payment through API and would "square away" with API later. The use of the equipment at API's place of business and tender of API's checks as payment were not shown to be acts inconsistent with the business relationship and did not reflect a clear intent to transfer title ownership of the assets and contract rights from Young to API. Indeed, Stark testified that Young had not informed him of the assignment. And significantly, Young conceded at trial that he had not informed Stark that he was going to assign the Restrictive Covenant to API. Under these circumstances, the evidence did not reflect a clear and unmistakable waiver of Stark's right to require compliance with the conditions for assignment set forth in the contract provisions. We cannot say that Stark waived his contract rights when he had no knowledge that an assignment was intended.

Because the evidence conclusively established that the assignment to API did not satisfy the conditions of the Asset Purchase Agreement and was therefore ineffective, the directed verdict in favor of Stark was authorized. See *Walker*, 229 Ga. App. at 127-128 (3). Compare *Mooneyham v. Provident Auto Leasing*, 288 Ga. App.

---

to consider Young's testimony as evidence that Stark knew that Young planned to assign the assets to API at some point in the future, the plain terms of the Asset Purchase Agreement provided the conditions that were required to be met before any assignment could be made.

[5] "Georgia courts may look to tax returns as probative evidence in ascertaining the existence of an assignment." *Forest Commodity Corp.*, 255 Ga. App. at 247 (1). Although the assignment was reflected on API's corporate tax return, there was no evidence that Stark was aware of the assignment or had ever seen the tax return.

837, 838-839 (2) (655 SE2d 640) (2007) (assignment of a lease was deemed valid when the lease expressly provided for the assignment and did not require that notice of the assignment be in writing).

2. In light of our holding in Division 1, we need not address API's claim that the trial court rendered an erroneous interpretation of the Restrictive Covenant. Because API had no right to enforce the Restrictive Covenant, this claim is moot.[6]

3. API and Young contend that the trial court erred in awarding attorney fees against them, jointly and severally. We agree.

"As a general rule, Georgia law does not provide for the award of attorney fees even to a prevailing party unless authorized by statute or by contract." (Citation and punctuation omitted.) *Monroe v. Taylor*, 259 Ga. App. 600, 601 (1) (577 SE2d 810) (2003). In this case, the Restrictive Covenant provided that the prevailing party in any action to enforce its provisions would be entitled to an award of reasonable attorney fees, costs, and expenses from the nonprevailing party. The trial court awarded attorney fees against both API and Young based upon this provision.

(a) The trial court's award of attorney fees against API was erroneous and must be vacated. As we held in Division 1 above, API was not a party to the Restrictive Covenant. As such, API could not be held liable for attorney fees under its provisions. "It is axiomatic that a person who is not a party to a contract is not bound by its terms." *Kaesemeyer*, 278 Ga. App. at 437 (1). See also *Levy*, 290 Ga. App. at 473 (1).

(b) The trial court's award of attorney fees against Young also must be vacated. Although Young was a party to the Restrictive Covenant, he was not the named plaintiff asserting the claim for its breach in the lawsuit. Rather, API was the only plaintiff filing the claim. Because Young was not a party to that claim of the lawsuit, he cannot be deemed as the nonprevailing party liable for attorney fees under that claim.

4. Lastly, Young asserts that the trial court erred in allowing Stark to add him as a defendant to the counterclaim and in denying his motion to dismiss the counterclaim for improper venue. Inasmuch as the jury returned a verdict in favor of Young as to the counterclaim, these alleged errors were rendered moot and present no grounds for reversal. See *Bullard v. Bouler*, 272 Ga. App. 397, 399 (2) (612 SE2d 513) (2005). "Because harm as well as error must be shown to warrant reversal, this enumeration is without merit."

---

[6] Likewise, Stark's motions to strike evidence and an attachment pertaining to this claim of error are denied as moot.

(Punctuation and footnote omitted.) *In re Estate of Sands-Kadel*, 292 Ga. App. 343, 346 (3) (665 SE2d 46) (2008).

In sum, we affirm the trial court's decision directing a verdict in favor of Stark as to API's claim for breach of the Restrictive Covenant, but we reverse and vacate the attorney fees award against API and Young. The remaining claims of this appeal are moot.

*Judgment affirmed in part, and reversed and vacated in part. Barnes, C. J., and Phipps, J., concur.*

DECIDED NOVEMBER 26, 2008 —
RECONSIDERATION DENIED DECEMBER 11, 2008.

*Briskin, Cross & Sanford, Michael D. Cross, Jr., Byron M. G. Sanford*, for appellants.

*Steven J. Strelzik*, for appellee.