A11A2186, A11A2187. CANTON PLAZA, INC. et al. v. REGIONS BANK, INC.; and vice versa.

(732 SE2d 449)

MILLER, Judge.

Canton Plaza, Inc. ("CPI") and Chaim Oami (collectively, "Plaintiffs") filed suit against Regions Bank, Inc. ("Regions"), asserting claims for breach of contract and wrongful foreclosure. In its answers to the complaint, Regions asserted two counterclaims seeking attorney fees against both CPI and Oami. At trial, Regions moved for a directed verdict on Plaintiffs' breach of contract and wrongful foreclosure claims. The trial court granted Regions's motion. Plaintiffs moved for a directed verdict on Regions's counterclaims for attorney fees, which the trial court also granted. These cross-appeals then ensued.

In Case No. A11A2186, Plaintiffs contend that the trial court erred in directing the verdict against them as to their breach of contract and wrongful foreclosure claims. Since Oami's other companies, namely H&I Real Estate, Inc. ("H&I") and NCO, Inc. ("NCO"), were the parties who suffered damages from the alleged misconduct, and these entities were not parties to this suit, the trial court properly determined that Plaintiffs were not entitled to recover damages belonging to H&I and NCO. Therefore, we affirm the trial court's judgment in Case No. A11A2186.

In Case No. A11A2187, Regions contends that the trial court erred in directing the verdict against Regions as to its counterclaims. The trial court did not err in directing a verdict against Regions on its counterclaims for attorney fees because Regions was precluded from recovering damages for merely having been sued by Plaintiffs. We affirm the trial court's judgment in Case No. A11A2187.

> A motion for directed verdict should not be granted where there exists even slight material issues of fact, because the trial court is substituting its judgment for the jury's; only when there is an absence of evidence or when no evidence supports an essential element of the case should a directed verdict be granted, because the trial judge takes the determination of the facts from the jury. The appellate review of directed verdicts is based upon the "any evidence" rule to support the case of the nonmoving party; when there is "any evidence," a directed verdict must be reversed. The direction of a verdict is proper only where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand

a particular verdict. When there is opinion evidence, circumstantial evidence, presumptions of fact, or evidence subject to more than one reasonable construction, the appellate courts shall carefully scrutinize the grant of a directed verdict, because such evidence may be construed as providing the "any evidence" creating a jury question.

(Citation and punctuation omitted.) *Teklewold v. Taylor*, 271 Ga. App. 664, 665 (610 SE2d 617) (2005); see also OCGA § 9-11-50 (a).

So construed, the trial evidence shows that in December 2002, CPI, a corporation solely owned by Oami, purchased a commercial shopping center from Regions known as Canton Plaza. CPI financed the purchase of Canton Plaza with a $976,000 commercial loan from Regions and pledged Canton Plaza as collateral. In connection with the loan, CPI executed a promissory note, a business loan agreement, and a deed to secure debt. Oami also executed a commercial guaranty in favor of Regions which named CPI as the borrower.

The original loan was for a one-year period. When the promissory note matured in January 2004, CPI and Regions renewed the note for the same amount as the original loan and with a new maturity date of January 10, 2006. In conjunction with renewing the promissory note, CPI executed another business loan agreement, and Oami executed another commercial guaranty. Thereafter, CPI made monthly payments to Regions.

During the course of the renewed loan period, CPI was involved in litigation with one of its Canton Plaza tenants, as a result of which the tenant was awarded a judgment against CPI. One week prior to entry of that judgment, however, CPI executed a bill of sale and quitclaim deed transferring all of its assets, including Canton Plaza, to H&I, another corporation completely owned by Oami. Shortly after the sale, CPI directed Canton Plaza's tenants to make payments to H&I rather than to CPI. Following the execution of the bill of sale and quitclaim deed, CPI became a shell entity with no assets.

When the renewed loan matured in January 2006, Regions extended the loan for another 90 days — until April 10, 2006 — in order to allow CPI to pay the entire debt or otherwise obtain substitute financing. CPI continued to make monthly payments to Regions during the 90-day extension period. After April 10, 2006, Regions sent CPI several "Past Due" and "Post Maturity" notices demanding payment of the entire loan amount.

When CPI failed to pay the entire loan amount, Regions began non-judicial foreclosure proceedings with respect to Canton Plaza. Oami testified that he was surprised to discover that Canton Plaza was scheduled for a foreclosure sale, because he had not received

timely notice of default and believed Regions would renew the loan. CPI subsequently filed a bankruptcy petition to stop Regions from completing a foreclosure sale.

During CPI's bankruptcy proceeding,[1] the bankruptcy trustee informed Oami that he was considering filing a lawsuit against Oami and H&I for the fraudulent transfer of CPI's assets to H&I. The lawsuit was never filed, however, because Oami and H&I negotiated a settlement with the trustee, which included a payoff of the Regions's loan and a $13,500 payment to the estate. H&I issued two checks to make this $13,500 settlement payment. H&I also issued three other checks to pay for CPI's legal fees and expenses associated with the bankruptcy proceedings. When asked how one of his companies could write a check on behalf of another one of his companies, Oami testified only that his "accountant [got] things straightened out afterwards."

NCO, another corporate entity owned by Oami, obtained financing to pay off the Regions loan, as contemplated by the settlement; the loan was paid off in November 2006.

After completion of the bankruptcy proceedings in August 2008, Plaintiffs filed suit against Regions. Plaintiffs alleged that Regions breached the terms of the promissory note by not extending a new loan to CPI, and that it wrongfully initiated foreclosure proceedings against Canton Plaza when CPI was not in default and was not given notice of the foreclosure proceedings. Plaintiffs sought to recover damages and attorney fees for the filing of CPI's bankruptcy petition; expenses incurred during the bankruptcy proceeding, including monies paid to the bankruptcy trustee; and expenses and interest paid on the NCO loan that was used to pay off CPI's debt to Regions. Plaintiffs also sought punitive damages. In its answer, Regions asserted counterclaims against CPI and Oami for attorney fees as provided for in both the business loan agreement, as well as the guaranty.

At trial, Plaintiffs called as witnesses Oami and an attorney who assisted Oami during CPI's bankruptcy proceedings. At the close of Plaintiffs' case-in-chief, Regions moved for a directed verdict, arguing that Plaintiffs failed to establish damages, because the evidence showed that the expenses Plaintiffs sought to recover were not incurred by CPI or Oami, but rather other entities, namely H&I and NCO. The trial court found that Plaintiffs failed to provide evidence

---

[1] In its bankruptcy schedule, CPI listed no assets and identified a debt of $976,000 owed to Regions.

of damages because it had no written contract or legal obligation to repay NCO or H&I. The trial court entered a directed verdict on Plaintiffs' claims.

Following this ruling, Regions presented its case under the counterclaims. Regions called its record custodian as a witness, who testified that, from the filing of Plaintiffs' lawsuit in 2008 through December 2010, Regions spent over $150,000 in attorney fees and other related expenses in connection with this case. On cross-examination, the records custodian testified that Regions already received approximately $17,000 in attorney fees when NCO paid off the Regions loan in 2006. At the close of Regions's case, Plaintiffs moved for a directed verdict on Regions's counterclaims. Plaintiffs argued that, once CPI's debt to Regions was paid off in 2006, there were no contractual obligations to enforce, and that Regions's defense in this case was not an enforcement of the subject agreements. The trial court granted Plaintiffs' motion for directed verdict on Regions's counterclaims, finding that Regions's defense in this case did not involve its enforcement of the business loan agreement or the guaranty, and that Plaintiffs' obligations under the note were extinguished when the note was paid in full. These cross-appeals followed.

### Case No. A11A2186

1. Plaintiffs contend that the trial court erred in granting Regions's motion for directed verdict on the ground that Plaintiffs failed to present evidence of damages. In particular, Plaintiffs argue that they provided some evidence of damages in the form of debt obligations to H&I and NCO when those companies incurred expenses on CPI's behalf. We disagree.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) *resultant damages* (3) *to the party who has the right to complain* about the contract being broken." (Punctuation and footnote omitted; emphasis supplied.) *Duke Galish, LLC v. Manton*, 308 Ga. App. 316, 320 (2) (707 SE2d 555) (2011). A plaintiff asserting a claim of wrongful foreclosure must establish (1) a legal duty owed to it by the foreclosing party, (2) a breach of that duty, (3) a causal connection between the breach of that duty and the injury it sustained, and (4) damages. *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371 (1) (601 SE2d 842) (2004).

"In order to sustain [the] grant of [a] directed verdict for failure to prove damages, there must be a complete absence of any competent evidence on this issue." (Citation and punctuation omitted.) *Jimenez*

*v. Chicago Title Ins. Co.*, 310 Ga. App. 9, 15 (3) (a), n. 26 (712 SE2d 531) (2011); see *Smith v. Gen. Finance Corp.*, 143 Ga. App. 390, 391 (1) (238 SE2d 694) (1977).

We have held that a transfer of funds between corporations controlled by the same individual is not sufficient evidence of actual damages to defeat a motion for directed verdict. See *DeJong v. Stern*, 162 Ga. App. 529, 530 (1) (292 SE2d 115) (1982) ("In our view, the . . . transfer of funds between corporations controlled by the same individual [is] not evidence of 'actual damages.' "). Moreover, although two corporations may have common shareholders, officers, and directors, each corporation is a legal entity "retaining its separate and independent character," and one corporation lacks standing to recover damages incurred by the other. *Augusta Tennis Club, Inc. v. Richmond County*, 219 Ga. App. 94 (1) (464 SE2d 228) (1995).

(a) *CPI's Damages*

It is undisputed that H&I paid for all CPI's bankruptcy costs, and that NCO secured a loan on behalf of CPI to payoff CPI's loan. Although Oami was the sole owner of CPI, H&I, and NCO, the corporations were separate entities. Although Oami testified that his accountant would "straighten out" the transfer of funds between Oami's corporations, this transfer of funds between corporations owned by Oami was insufficient to establish that CPI had sustained actual damages. See *DeJong*, supra, 162 Ga. App. at 530 (1). There was no evidence that these were liabilities owed by CPI. Consequently, CPI lacks standing to pursue any damages belonging to H&I or NCO. See *Augusta Tennis Club*, supra, 219 Ga. App. at 94 (1).

(b) *Oami's Damages*

"It is axiomatic that each corporation is a separate entity, distinct and apart from its stockholders." (Citation and punctuation omitted.) *Accurate Printers, Inc. v. Stark*, 295 Ga. App. 172, 175 (1) (a) (671 SE2d 228) (2008). Canton Plaza was owned in the name CPI. Although Oami was the owner of CPI, he did not enter into the contracts underlying this lawsuit — the promissory note and security deed — in his individual capacity.[2] As a result, Oami was not a party to those contracts. Cf. id. (holding that corporation and sole owner of corporation were separate legal entities and corporation was not party to contract signed by owner in individual capacity). Therefore, Oami was not entitled to pursue the breach of contract claim. See OCGA § 9-2-20 (a) ("As a general rule, an action on a contract, . . . shall be

---

[2] We note that Oami did enter into a contract with Regions in his individual capacity with respect to the commercial guaranty. However, Oami conceded that Regions never took any action to enforce the guaranty.

brought in the name of the party in whom the legal interest in the contract is vested[.]"); *Accurate Printers*, supra, 295 Ga. App. at 175 (1) (a). Nor was Oami entitled to pursue a claim for wrongful foreclosure. See *Blanton v. Duru*, 247 Ga. App. 175, 178 (3) (543 SE2d 448) (2000) (holders of security deed are proper parties to wrongful foreclosure action). Even if we were to assume otherwise, in light of the evidence that Oami was transferring funds between his corporations, he did not show actual damages. See *DeJong*, supra, 162 Ga. App. at 530 (1). In sum, Oami brought the action under the wrong entities.

For the foregoing reasons, Plaintiffs' claims for breach of contract and wrongful foreclosure failed. Therefore, the trial court did not err in granting Regions's motion for directed verdict on these grounds. As a result, Regions's derivative claims of punitive damages and attorney fees also fail. Cf. *ULQ, LLC v. Meder*, 293 Ga. App. 176, 185 (6) (666 SE2d 713) (2008).

2. Plaintiffs also contend that the trial court erred in directing a verdict before allowing them the opportunity to add H&I and NCO as proper parties to the action. Plaintiffs waived any such argument, however, by failing to raise it in the trial court. See *Fulton County Bd. of Assessors v. Calliope Properties, LLC*, 312 Ga. App. 875, 878-879 (1) (720 SE2d 312) (2011) (a real-party-in-interest objection may be made at any time up to and including a trial on the merits; otherwise it is waived); *Franco v. Cox*, 265 Ga. App. 514, 515 (1) (b) (594 SE2d 717) (2004) (party waived real-party-in-interest objection by not raising it before the trial court, and the trial court was not required to add another party on its own motion).

## Case No. A11A2187

3. Regions contends that the trial court erred in directing a verdict against it as to its counterclaims, because the business loan agreement and guaranty contained contractual entitlement to recover for attorney fees incurred with the enforcement of these respective agreements. We disagree.

Here, the trial court found that since Regions was not enforcing the subject agreements in connection with this lawsuit, it could not recover attorney fees. Whether Regions was entitled to attorney fees involves construction of the business loan agreement and guaranty.

In this State[,] the construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply

enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

(Citation and punctuation omitted) *Lovell v. Thomas*, 279 Ga. App. 696, 698 (1) (a) (632 SE2d 456) (2006).

Here, the business loan agreement pertinently provided:

Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the *enforcement* of this Agreement. Lenders may hire or pay someone else to help *enforce* this Agreement, and Borrower shall pay the costs and expenses of such *enforcement*. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit[.]

(Emphasis supplied.) The guaranty executed by Oami provided:

Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the *enforcement* of this Guaranty. Lender may hire or pay someone else to help *enforce* this Guaranty, and Guarantor shall pay the costs and expenses of such *enforcement*. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit[.]

(Emphasis supplied.)

There is no merit to Regions's claim that its defense in this lawsuit was an "enforcement" of the promissory note, business agreement, or guaranty. "[D]ictionaries may supply the plain and ordinary meaning of a word." (Citation and punctuation omitted.) *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 107 (1) (661 SE2d 578) (2008). Black's Law Dictionary defines "enforce" as follows: "[t]o give force or effect to (a law, etc.); to compel obedience to . . . [or] to compel a person to pay damages for not complying with (a contract)." (Punctuation omitted.) Black's Law Dictionary 608 (9th ed. 2009). Black's Law Dictionary similarly defines "enforcement" as follows: "[t]he act or process of compelling compliance with a law, mandate, decree or

agreement." (Punctuation omitted.) Id. Since CPI's loan was paid in full at the time CPI and Oami filed suit in this case, Regions could not compel either CPI or Oami to comply with their obligations under the business loan agreement or guaranty, respectively.

Rather, Regions's counterclaims were based on having to defend against Plaintiffs' complaint for breach of contract and wrongful foreclosure. Significantly, Regions collected attorney fees when CPI's loan was paid in full in 2006, and the damages sought in Regions's counterclaims originated with the filing of Plaintiffs' lawsuit. OCGA § 13-6-11 provides that "[t]he expenses of litigation generally shall not be allowed as a part of the damages[.]" "Under the plain language of this statute, . . . a defendant's expenses of defending against a claim are not recoverable." (Citations and punctuation omitted.) *Emerson v. Brookmere Homeowners Assn.*, 311 Ga. App. 371, 372 (715 SE2d 775) (2011). Moreover, the underlying policy of OCGA § 13-6-11 bars "a defendant from transforming a plaintiff's case into that defendant's damage suit for having been sued[.]" *Beall v. F.H.H. Constr., Inc.*, 193 Ga. App. 544, 546 (4) (388 SE2d 342) (1989). Although OCGA § 13-6-11 does not bar recovery when a defendant incurs expenses in prosecuting an independent claim, see id., Regions did not assert an independent claim against Plaintiffs. As discussed above, Regions's claims were not for the enforcement of the business loan agreement or guaranty, which had previously been resolved upon its receipt of payment in full satisfaction of the loan. Since success on Regions's counterclaims would amount to a recovery of damages for merely having been sued by Plaintiffs, OCGA § 13-6-11 precluded Regions from recovering attorney fees. Cf. *Ravenwood Church of Wicca v. Starbright, Inc.*, 168 Ga. App. 870, 872 (2) (310 SE2d 582) (1983). Accordingly, the trial court did not err in directing a verdict against Regions on its counterclaims for attorney fees.

4. Plaintiffs have moved this Court to impose a penalty for a frivolous appeal under Court of Appeals Rule 15 (b). We decline to impose such a penalty.

*Judgments affirmed. Ellington, C. J., and Doyle, P. J., concur.*

DECIDED MARCH 29, 2012.

*Stevens & Stevens, Ronald S. Stevens, Andrew M. Stevens, Jacobs, King & Wallack, Cary S. King, Scott R. King*, for appellants.

*Parker, Hudson, Rainer & Dobbs, William J. Holley II, Rebeccah L. Bower, Scott E. Zweigel*, for appellee.