## A10A0989. GOLDSMITH et al. v. PETERSON et al.

(703 SE2d 694)

ADAMS, Judge.

Robert H. and Carolyn E. Goldsmith filed suit against John R. and Yvonne Peterson on March 1, 2007, seeking reimbursement of their escrow deposit, interest and attorney fees, arising out of a Purchase and Sales Agreement signed by the parties in connection with the sale of the Petersons' property. The Petersons filed a counterclaim seeking $93,000 in damages and attorney fees. Following a jury trial, the trial court entered a judgment in favor of the Petersons on their counterclaim in the amount of $3,000 plus

---

$28,388.45 in attorney fees. The Goldsmiths subsequently filed a "Motion for and Brief in Support of a Judgment Notwithstanding the Verdict or in the Alternative for a New Trial." The trial court denied the motion, and the Goldsmiths appeal.

The parties entered into the Purchase and Sales Agreement on May 23, 2006. The Agreement set a purchase price of $469,000 for the property and required the Goldsmiths to pay earnest money of $7,500. It further provided that the transaction was conditioned upon the Goldsmiths' "ability to obtain a loan" for 90 percent of the purchase price at 6.5 percent per annum. The Agreement defined the phrase "ability to obtain a loan" to mean that the Goldsmiths are "qualified to receive the loan . . . based upon the lender's customary and standard underwriting criteria." Under the Agreement, the Goldsmiths were expressly "obligated to close this transaction if [they have] the ability to obtain a loan with [the same terms] and/or any other loan for which [the Goldsmiths have] applied and been approved."

The Goldsmiths took the position that they could not obtain a loan pursuant to the terms set forth in the Agreement, and because this precondition was not met, the contract was invalid, entitling them to a return of their earnest money. Nevertheless, the evidence at trial showed that within two days of the Agreement's execution, on May 25, 2006, SunTrust Mortgage, Inc. preapproved the Goldsmiths for a loan complying with the terms of the Agreement. The preapproval letter states that the Goldsmiths had a choice of a number of different options but elected to pursue a loan structure involving two loans for 80 percent and 10 percent respectively. A SunTrust senior mortgage consultant testified that the Goldsmiths' preapproval would have covered a 30-year fixed rate mortgage at 6.5 percent with either 10 or 20 percent down, but they chose the two-loan structure in order to avoid paying mortgage insurance, a savings of approximately $200 per month. At some point, however, the Goldsmiths decided not to purchase the property, and the transaction never closed.

1. The Goldsmiths argue that the trial court erred in submitting the Petersons' claim for damages to the jury because their recovery was limited under the Agreement to the amount of the earnest money. The Agreement provided that in the event of a breach by the Goldsmiths, the earnest money would be paid to the Petersons by check, which if accepted and deposited by them "shall constitute liquidated damages in full settlement of all" of the Petersons' claims. The Petersons argue, however, that they are entitled to the additional damages awarded by the jury because the Goldsmiths waived the liquidated damages provision when they brought suit for a return of the escrow, plus attorney fees. They note that the Goldsmiths took the position the Agreement was invalid and sought

additional recovery over and above the escrow amount.

"It is well established that a party to a contract may waive a contractual provision for his or her benefit." (Citation omitted.) *Forsyth County v. Waterscape Svcs.*, 303 Ga. App. 623, 630 (2) (a) (694 SE2d 102) (2010).

> A waiver may be express, or may be inferred from actions, conduct, or a course of dealing. Waiver of a contract right may result from a party's conduct showing his election between two inconsistent rights. . . . However, all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist.

(Citation omitted.) Id.

We find no evidence in this case to support a finding that the Goldsmiths intentionally relinquished their right to enforce the liquidated damage provision. Thus the trial court erred in submitting the issue of waiver to the jury. "While normally the question of waiver is a matter for the jury, where, as here, the facts and circumstances essential to the waiver issue are clearly established, waiver becomes a question of law." (Citation and punctuation omitted.) *Forsyth County*, 303 Ga. App. at 630 (2) (a). Here, there was no action, conduct or course of dealing by the Goldsmiths that can be construed as a waiver. Although the Goldsmiths' complaint asserted that the Agreement was invalid, thus entitling them to a return of the escrow and the recovery of attorney fees, that position does not amount to a waiver. The Goldsmiths simply disputed the Petersons' right to recover such damages and sought to recover their own. They were still entitled to argue that if the Agreement were deemed valid, the Petersons would be limited to recovering liquidated damages on their counterclaim. The liquidated damage provision, by its own terms, applies only to the Petersons' damages for a breach of contract and does not address the amount the Goldsmiths could recover for any breach.

Moreover, by seeking damages for breach of contract, the Petersons affirmed the Agreement and bound themselves to its terms. "Under the contract that [they] affirmed, [the Petersons] agreed to accept liquidated damages of the [escrow] in lieu of any other contract damages that were provable. This bars further recovery for the same damages, in either contract or tort." *Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707, 713 (2) (507 SE2d 493) (1998). Accordingly, we reverse the portion of the judgment awarding the Petersons $3,000 over and above the escrow amount.

2. The Goldsmiths next assert that the trial court erred in

submitting the issue of attorney fees to the jury under any theory of recovery. The jury was charged on the issue of attorney fees under both OCGA § 13-6-11 and the abusive litigation provisions of OCGA § 51-7-81 et seq.[1]

The Goldsmiths argue that the trial court erred in charging the jury under OCGA § 13-6-11 because the Petersons failed to properly plead and make a prayer to recover such fees in their counterclaim and further failed to give notice of their intent to pursue such fees. We find no merit to this argument. An award of attorney fees is authorized under OCGA § 13-6-11 "where a plaintiff specifically prays for attorney fees and refers either to the Code section or to the criteria set forth therein, by alleging the defendant acted in bad faith in the underlying transaction, was stubbornly litigious, or caused the plaintiff unnecessary trouble and expense." (Citation omitted.) *Joyner v. Raymond James Financial Svcs.*, 268 Ga. App. 835, 839 (2) (602 SE2d 871) (2004). The Petersons' counterclaim tracked the language of OCGA § 13-6-11 by alleging that the Goldsmiths "have acted in extreme bad faith, have been stubbornly litigious and have caused [the Petersons] to incur unnecessary trouble and expenses" and also made a specific prayer to recover their attorney fees. Thus, the issue was properly raised for trial, and the defendants re-asserted their claim for fees under OCGA § 13-6-11 in their proposed pre-trial order. Accordingly, this issue was properly submitted to the jury.

The Goldsmiths further assert that the trial court erred in charging the jury on attorney fees for abusive litigation under OCGA § 51-7-81 because it was improper to seek such damages by way of a counterclaim in the original action. We agree. The law is clear that a counterclaim for abusive litigation pursuant to OCGA § 51-7-81 is premature if it is brought before the final termination of the underlying proceedings. *Hagemann v. City of Marietta*, 287 Ga. App. 1, 7 (1) (650 SE2d 363) (2007); *State Soil &c. Comm. v. Stricklett*, 252 Ga. App. 430, 438 (4) (c) (555 SE2d 800) (2001); OCGA § 51-7-84 (b) ("An action or claim under [OCGA § 51-7-80 et seq.] requires the final termination of the proceeding in which the alleged abusive litigation occurred. . . .") Thus, the Petersons' claim for attorney fees under OCGA § 51-7-81 was premature, and the trial court erred in charging the jury under that provision.[2]

---

[1] We find nothing in the record below to support the Goldsmiths' argument that the issue of attorney fees under OCGA § 9-15-14 was ever submitted to the jury.

[2] Indeed, the Petersons acknowledged below that their counterclaim on this ground was premature but argued that the Goldsmiths had waived the issue. We find that the Goldsmiths' failure to object does not result in a waiver, as no claim for abusive litigation even existed until the final termination of the underlying action. Cf. *State Farm &c. Ins. Co. v. Wright*, 245 Ga.

Although the jury's verdict did not specify the basis for its attorney fee award of $28,388.45, the jury awarded attorney fees against the Goldsmiths and their counsel. Such an award is authorized under the language of OCGA § 51-7-81, but not under OCGA § 13-6-11. See *Kirsch v. Meredith*, 211 Ga. App. 823, 824 (440 SE2d 702) (1994) (plain language of OCGA § 51-7-81 demonstrates that claim for abusive litigation not confined to a party to the prior action). Accordingly, because the jury may have based its award of attorney fees on an improper theory of recovery, we reverse that portion of the judgment and remand for a new trial on the issue of attorney fees. Cf. *Constr. Lender v. Sutter*, 228 Ga. App. 405, 410 (3) (491 SE2d 853) (1997) (general verdict returned on improper theory of liability must be reversed); *Strickland v. Howard*, 214 Ga. App. 307, 310 (2) (447 SE2d 637) (1994) (same).[3]

3. The Goldsmiths next assert that the trial court erred by admitting hearsay during the direct examination of Jeanette Holloway, a SunTrust Mortgage employee, who testified about a telephone conversation she overheard between Carolyn Goldsmith and Teresa Mitchell, another SunTrust Mortgage employee. The trial court allowed such testimony over the hearsay objection of the Goldsmiths' counsel.[4] Holloway testified that after SunTrust Mortgage learned that the Goldsmiths no longer intended to purchase the property, Holloway answered a telephone call from Carolyn Goldsmith who asked to speak with Mitchell. Holloway transferred the call to Mitchell, then walked into Mitchell's office, where she overheard Mitchell tell Goldsmith that she qualified for the loan and that Mitchell could not do what Goldsmith was asking her to do because it would be illegal. Holloway testified only as to Mitchell's portion of the conversation, which was the only portion she heard. She was not allowed to testify as to anything Mitchell later told her about Carolyn Goldsmith's side of the conversation.

The trial court allowed the testimony on two grounds. First, the judge stated that he was not sure that the evidence was even hearsay because it derived its value solely from the credibility of Holloway —

---

App. 493 (1), (3) (538 SE2d 147) (2000) (insurer did not waive subrogation by failing to assert cross-claim until after jury verdict where claim did not ripen until damages awarded). In any event, the Petersons voluntarily abandoned the portion of the judgment awarding attorney fees against the Goldsmiths' counsel personally. The trial court subsequently amended its judgment to delete any award of damages and attorney fees against the Goldsmiths' counsel.

3 Given this holding, we need not address the Goldsmiths' enumeration arguing that the trial court erred in failing to require the Petersons to segregate their recoverable attorney fees from those that were not recoverable. Moreover, their argument that the trial court erred in allowing an award of attorney fees against their counsel is moot since, as stated in footnote 2, the trial court vacated that portion of the verdict.

4 The Goldsmiths later moved for a mistrial on the same ground, but the trial court denied the motion.

she testified only as to what she heard — and did not rest mainly on the veracity or competency of other persons. See OCGA § 24-3-1 (defining hearsay). Second, in the event that it was hearsay, he admitted it out of "necessity" because Mitchell was unavailable to testify. He found that no comparable evidence was available and the statement showed circumstantial guarantees of trustworthiness.

"A trial court's decision to admit evidence as an exception to the hearsay rule will not be disturbed absent an abuse of discretion." *Ishak v. First Flag Bank*, 283 Ga. App. 517, 519 (642 SE2d 143) (2007). Hearsay may be admitted under the necessity exception if it meets the two prerequisites of necessity and trustworthiness. See OCGA § 24-3-1 (b); *McCoy v. State*, 273 Ga. 568 (4) (544 SE2d 709) (2001). "If the declarant is alive and her testimony is compellable, proof of unavailability demands a showing that she could not be located after reasonable efforts to find her and secure her presence." (Footnote omitted.) *Battle v. State*, 244 Ga. App. 771, 774 (536 SE2d 761) (2000). "It is within the sound discretion of the trial court to determine the unavailability of a witness and a party's diligence in searching for that witness." Id. "Whether testimony was accompanied by particularized guarantees of trustworthiness is a matter for the trial court's discretion, and its decision will be upheld on appeal absent an abuse of that discretion." (Footnote omitted.) *Smith v. State*, 284 Ga. 304, 308 (3) (667 SE2d 65) (2008).

Here the record demonstrates that Mitchell failed to respond to the Petersons' subpoena, despite their attorney's "desperate" attempts to contact her and ensure that she would appear at trial. And, in fact, the trial court later held a hearing on the matter and cited Mitchell for contempt for failing to appear. The trial court also found that the evidence had circumstantial degrees of trustworthiness, but did not specify the basis for that determination.

But pretermitting whether the evidence was admissible out of necessity, we find that the trial court properly overruled the hearsay objection because the testimony was admissible under the res gestae exception to the hearsay rule. See *Patel v. State*, 278 Ga. 403, 404-405 (2) (603 SE2d 237) (2004).

> To fall within the res gestae, a statement must be contemporaneous with the main fact, but need not be precisely concurrent in point of time; it is sufficient if such declarations spring out of the transaction, if they elucidate it, if voluntary and if made at such time as reasonably to exclude the idea of design.

(Citation and punctuation omitted.) *Davis v. Reid*, 272 Ga. App. 312, 317 (2) (612 SE2d 112) (2005). The telephone conversation was a

communication concerning the loan at issue in this case between the parties to that loan. Holloway testified only as to the portion of the conversation she directly overheard. Moreover, Holloway testified from her own knowledge that the Goldsmiths had been approved for the loan, noting that "it was a very clean loan." Under these circumstances, Holloway's testimony met the criteria of the res gestae exception. And the mere fact that Mitchell's side of the conversation reflected her subjective opinion of something Carolyn Goldsmith might have said, "as opposed to an objective, observable fact, is of no consequence. As long as it is part of the res gestae, a statement of opinion is admissible." (Citation omitted.) *Patel*, 278 Ga. at 405 (2).

4. The Goldsmiths further argue that the trial court erred in admitting new evidence during jury deliberations. A copy of the Agreement was admitted into evidence at trial and that copy, along with other trial exhibits, were submitted to the jury for its consideration. During the course of their deliberations, the jury asked for "access to the Purchase and Sales Agreement with original signatures." Over the Goldsmiths' objection, the trial court allowed the original Agreement, which was not tendered at trial, to be submitted to the jury with limiting instructions that the jury disregard any differences that may exist in the two documents and that in the event of any differences, the jurors rely upon the copy admitted into evidence, not the original Agreement. The Goldsmiths have not pointed to any differences between the original and the photocopy of the Agreement. Therefore, even if the trial court committed error in allowing the jury to see the original Agreement, the Goldsmiths failed to show how the purported error harmed them. Thus, reversal is not warranted on this ground. See *Gilmer v. State*, 234 Ga. App. 309, 311 (4) (506 SE2d 452) (1998).

*Judgment affirmed in part and reversed in part, and case remanded. Smith, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 23, 2010.

*Begner & Begner, Alan I. Begner, Cory G. Begner*, for appellants.
*Emory A. Schwall*, for appellees.