**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/**

**March 25, 2013**

# In the Court of Appeals of Georgia

A12A2317, A12A2318. VRATSINAS CONSTRUCTION COMPANY v. TRIAD DRYWALL, LLC.; and vice versa.

DILLARD, Judge.

After the completion of a commercial construction project in which the project owner declared bankruptcy, Triad Drywall, LLC ("Triad"), a subcontractor, sued Vratsinas Construction Company ("VCC"), the general contractor, to recover money owed for its work on the project. VCC defended the lawsuit based upon a "pay-if-paid" provision contained in the parties' contract, which provided that Triad would not be paid unless and until VCC was first paid by the project owner. The trial court denied VCC's motions for summary judgment, directed verdict, and judgment notwithstanding the verdict, holding that the question of whether VCC waived the pay-if-paid provision presented an issue for jury resolution. The jury ultimately

awarded damages to Triad, and the parties filed cross-appeals. In Case Number A12A2317, VCC argues, *inter alia*, that the trial court erred in submitting the issue of waiver to the jury. In Case Number A12A2318, Triad asserts certain legal errors contingent upon the grant of a new trial in VCC's appeal. Because we conclude that VCC was entitled to a judgment as a matter of law on the issue of waiver, we are constrained to reverse in Case Number A12A2317, rendering Triad's appeal in Case Number A12A2318 moot.

Construed in the light most favorable to Triad,[1] the facts show that VCC was the general contractor under an agreement with Thomas Enterprises/Fourth Quarter Properties (the "Owner") to build the Ashley Park shopping center (the "Project") in Newnan. In January 2007, VCC contracted with Triad to install drywall and drop ceilings, and to perform other work on the Project (the "Subcontract"). The Subcontract contained the following pay-if-paid provision:

> Notwithstanding anything contained herein to the contrary, save and except when the failure to receive payment is the result of default by [VCC] in the performance of its obligations under the Contract Documents unrelated to [Triad's] performance of the Subcontract, all

---

[1] *See Hill Roofing Co., Inc. v. Lowe's Home Ctrs. Inc.*, 265 Ga. App. 822, 822 (595 SE2d 638) (2004).

2

payments by [VCC] to [Triad] under the Subcontract, including without limitation, progress payments, full payment or partial release of retainage, payment for change orders and final payment, are expressly and unequivocally contingent upon and subject to Owner's acceptance of all Subcontract Work and [VCC's] receipt of payment from Owner for the Subcontract Work. Subcontractor expressly acknowledges that it relies on payment under the Subcontract on the creditworthiness of Owner, and not that of Contractor. It is expressly understood that any other basis for such non-payment by Owner, including the bankruptcy or insolvency of Owner, will not excuse this condition precedent to payment from [VCC] to [Triad]. [Triad] further agrees that Owner's acceptance of the Subcontract Work and Owner's payment to [VCC] for the Subcontract Work are express, independent conditions precedent to any obligation of [VCC] to make any payments to [Triad] and are not merely expressions of the time or manner of such payments.

It is undisputed that VCC paid Triad's first three payment applications[2] for which the Owner paid VCC in full. But as rumors started swirling about the solvency of the Owner, Gadi Gal—a co-owner of Triad—requested a meeting with John Davenport, VCC's project manager. During that meeting (which took place in the fall of 2007), Gal—who was acutely aware of the contractual pay-if-pay

---

[2] A payment application is the vehicle through which a subcontractor submits its invoices and requests for payment to the general contractor. As a general rule, Triad filled out its payment applications on the 20th day of any given month and was supposed to receive payment from VCC by the 20th day of the following month.

provision—expressed concern about the Owner's ability to pay for the Project. According to Gal, Davenport told him not to worry about the Owner's finances and to keep working, stating that VCC would pay Triad from its "own pocket" if necessary.[3]

After this meeting, Triad continued work on the Project and submitted a fourth payment application to VCC, who paid Triad the entire outstanding balance (via two separate checks—one issued in November and one issued in February), despite not having been paid in full for that work by the Owner.[4] VCC refused to pay subsequent payment applications, however, and by the time Triad finished work on the Project in the spring of 2008, Triad had *seven* unpaid applications totaling approximately $465,888. The Owner did not pay any monies to VCC after September 2007, despite the continuing work and ultimate completion of the Project, and VCC tendered no payment to Triad after the February 2008 check.

---

[3] At trial, Davenport agreed that he met with Gadi Gal, but denied telling Gal that VCC would pay Triad from its own pocket. In accordance with our standard of review, however, we must assume that this statement was made as represented by Gal. *See Hill Roofing Co., Inc.,* 265 Ga. App. at 822.

[4] VCC only received a partial payment from the Owner for the work covered by the fourth payment application.

In March 2009, Triad filed the instant lawsuit against VCC to recover the outstanding balance owed on the remaining payment applications. VCC argued, in accordance with the pay-if-paid provision, that it was not contractually obligated to pay Triad because it had not received payment from the Owner. Triad, on the other hand, maintained that VCC waived the pay-if-paid provision through its conduct when (1) Davenport assured Triad that VCC would pay Triad from its "own pocket," and (2) VCC paid Triad's fourth payment application despite not having been paid in full by the Owner. The trial court denied VCC's motion for summary judgment after holding that the issue of whether VCC waived the pay-if-paid provision presented a genuine issue of material fact for jury resolution[5] and, at the conclusion of Triad's case, denied VCC's motion for a directed verdict. The jury returned a verdict in favor of Triad for $465,888 plus interest and the trial court entered judgment on the verdict. These cross-appeals follow the trial court's denial of VCC's motion for judgment notwithstanding the verdict.

1. In Case Number A12A2317, VCC argues that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict because

---

[5] VCC sought and was denied a certificate of immediate review of the trial court's denial of its motion for summary judgment.

Triad failed as a matter of law to present sufficient evidence to show waiver of the pay-if-paid provision.[6] We agree.

To begin with, we note that a party to a contract may waive a contractual right, and that any such waiver may be accomplished expressly or implicitly through the party's conduct.[7] But the law will not infer the waiver of an important contract right unless "the waiver is *clear and unmistakable*."[8] And because waiver is not favored

---

[6] VCC also argues that the trial court committed reversible error by denying its motion for summary judgment, but "after a verdict and judgment, review of an order denying summary judgment is moot." *Rowe v. Law Offices of Ben C. Brodhead, PC.*, __ Ga. App. __, __ n.7 (735 SE2d 39) (2012).

[7] *See Goldsmith v. Paterson*, 307 Ga. App. 26, 28 (1) (703 SE2d 694) (2010); *Forsyth County v. Waterscape Servs., LLC*, 303 Ga. App. 623, 630 (2)(a) (694 SE2d 102) (2010).

[8] *Accurate Printers, Inc. v. Stark*, 295 Ga. App. 172, 177 (1) (b) (671 SE2d 228) (2008) (punctuation omitted) (emphasis supplied); *accord Croxton v. MSC Holding, Inc.*, 227 Ga. App. 179, 183 (489 SE2d 77) (1997); *see also Eckerd Corp. v. Alterman Props., Ltd.*, 264 Ga. App. 72, 75 (1) (589 SE2d 660) (2005) ("A party may by his conduct waive a legal right but where the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible." (punctuation omitted)); *MNM 5, Inc. v. Anderson/6438 Northeast Partners, Ltd.*, 215 Ga. App. 407, 410 (451 SE2d 788) (1994) (same); *Stapleton v. Dismukes*, 43 Ga. App. 611, 620 (c) (159 SE2d 768) (1931) (same) (quoting *Berman v. Fraternities Health & Acc. Ass'n*, 78 A. 462, 464 (Me. 1910)—the case from which this language originates).

under the law, the evidence relied upon to prove a waiver "must be so clearly indicative of an intent to relinquish a then known particular right or benefit as to exclude any other reasonable explanation."[9] Indeed, all the attendant facts, taken together, must amount to an "intentional relinquishment of a known right, in order that a waiver may exist."[10] The burden of proof lies with the party asserting waiver[11] and, although generally a jury question, when "the facts and circumstances essential to the waiver issue are clearly established, waiver becomes a question of law."[12]

---

[9] *D. I. Corbett Electric, Inc. v. Venture Constr. Co.*, 140 Ga. App. 586, 588 (2) (231 SE2d 536) (1976) (punctuation omitted); *see also Plumer v. Continental Cas. Co.*, 12 Ga. App. 594, 599 (77 SE 917) (1913) (same).

[10] *Goldsmith*, 307 Ga. App. at 28 (1) (punctuation omitted); *see also Forsyth County*, 303 Ga. App. at 630 (same).

[11] *See Mahsa, Inc. v. Al-Madinah Petroleum, Inc.*, 276 Ga. App. 890, 895 (3) (a) (625 SE2d 37) (2006) (holding that "[w]aiver and estoppel are affirmative defenses under OCGA § 9-11-8 (c)," and "[a]s such the burden of proof rests with the party asserting the defense."); *Mortensen v. Fowler-Flemister Concrete*, 252 Ga. App. 395, 396 (2) (555 SE2d 492) (2001) (same).

[12] *Goldsmith*, 307 Ga. App. at 28 (1) (punctuation omitted); *see also Forsyth County*, 303 Ga. App. at 630 (same); *Mauldin v. Weinstock*, 201 Ga. App. 514, 520 (411 SE2d 370) (1991) (same).

The essential facts in the case *sub judice* fail to create a jury question as to the issue of waiver.[13] The sole evidence of waiver consists of Davenport's statement to Gal that VCC would pay Triad out of its own pocket and VCC's subsequent payment of Triad's fourth payment application when it had only received a partial payment from the Owner.[14] We do not, however, consider these facts in a vacuum, but instead

---

[13] In its brief, Triad relies on *Oxford Motors Co. v. Niblack*, 183 Ga. App. 771 (360 SE2d 23) (1987) for the proposition that "the waiver of contract provisions" is a "question for the trior of fact when the evidence in that regard is conflicting," *id*. at 772, and argues that because the evidence in this case is "conflicting" as to whether the pay-if-paid provision was waived, VCC was not entitled to judgment as a matter of law. Triad's reliance on *Oxford Motors* is misplaced. It cannot be, as Triad suggests, that *any* evidence presented by a party opposing a motion for directed verdict or motion for judgment notwithstanding the verdict amounts to "conflicting evidence" sufficient to create a jury question. Indeed, in the very case relied upon by this Court in *Oxford Motors* for the foregoing proposition, we explained that the overarching question in such matters is whether "the evidence of record is [ ] dispositive of this issue," so as to warrant judgment as a matter of law. *Integrated Micro Systems, Inc. v. NEC Home Electronics (USA), Inc.*, 174 Ga. App. 197, 202 (329 S.E.2d 554) (1985). And we are only able to make this evidentiary determination by following the well-established case law outlined *passim*, which explicitly requires that any waiver of a contractual right must be clear and unmistakable. *See, e.g.*, *Accurate Printers, Inc.*, 295 Ga. App. at 177 (1) (b).

[14] Neither party raised or argued a mutual departure from the Subcontract. *See* OCGA § 13-4-4 ("Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.").

are charged with examining all of the attendant facts and circumstances contextually in order to assess whether there was a clear and unmistakable intent by VCC to waive an important contract right.[15]

And here, after the alleged waiver of the pay-if-paid provision by VCC, Triad continued working and submitted *seven* additional payment applications in accordance with the parties' practice. Importantly, VCC refused payment for each and every one of these applications. Indeed, Gadi Gal testified that during the interim period after the alleged waiver and prior to finishing the Project, he called VCC "many times" to request payment, and VCC consistently refused his requests, and that because of these refusals "he knew then that [Triad was] in trouble."

Moreover, Triad's account manager—who was responsible for billing on the Project—testified during the trial that she was never informed (nor did she understand) that any changes had been made to the pay-if-paid procedure with VCC. Thus, she continued to send out standard emails to VCC inquiring as to whether VCC had yet received payment from the Owner in order that Triad's outstanding payment applications could be paid. The record contains email correspondence between the account manager and VCC in both June 2008 and April 2009, which reflect that she

---

[15] *Mahsa, Inc.*, 276 Ga. App. at 895 (3) (a).

clearly anticipated and understood that Owner payment to VCC was a prerequisite to Triad's receipt of payment from VCC; and VCC repeatedly informed Triad that it had not yet received payment from the Owner.

Finally, Ziv Gal—a relative of Gadi Gal and Triad's then co-owner—testified,[16] stating that he was aware of the pay-if-paid provision and that nothing in his dealings with VCC either during or after the Project led him to believe that the owner-pay contingency was ever changed by either party or waived by VCC. Indeed, he attended a payment meeting with VCC personnel after the completion of the Project and described them as "very forthcoming with information" and said that they "encouraged [Triad] to protect [its] rights in the [P]roject." But according to Ziv Gal, no one from VCC ever suggested at any time that anything short of strict compliance with the payment terms of the Subcontract would be followed or accepted.

Under the foregoing circumstances, the trial court erred in submitting the issue of waiver to the jury.[17] As previously noted, when "the facts and circumstances

---

[16] Ziv Gal's role for Triad included, *inter alia*, attempting to collect money from VCC.

[17] *See Goldsmith*, 307 Ga. App. at 28 (1) (holding that the trial court erred in submitting the issue of waiver to the jury when "the facts and circumstances essential to the waiver issue [were] clearly established"); *Primetech Sys., Inc. v. Avion Sys., Inc.*, 286 Ga. App. 175, 176 (2) (648 SE2d 487) (2007) (affirming the grant of

10

essential to the waiver issue are clearly established, waiver becomes a question of law."[18] The statements and conduct of both Triad and VCC during and after the Project clearly establish a lack of intent or understanding that VCC waived the important contract right contained within and enshrined by the pay-if-paid provision. We are, therefore, constrained to reverse.

2. In light of our holding in Division 1, we need not consider VCC's remaining enumerations of error in Case Number A12A2317. Likewise, Triad's appeal in Case Number A12A2318, which was contingent upon the grant of a new trial in Case Number A12A2317, is rendered moot and is, therefore, dismissed.

*Judgment reversed in Case Number A12A2317; appeal dismissed as moot in Case Number A12A2318. Ellington, C. J., and Phipps, P. J., concur.*

---

summary judgment and holding no waiver as a matter of law of contract provision requiring approval signatures for payment despite the payment of five invoices without required signatures); *D. I. Corbett Electric, Inc. v. Venture Constr. Co.*, 140 Ga. App. at 587-88 (2) (affirming the grant of direct verdict on the issue of waiver after concluding that the subcontractor presented insufficient evidence that the primary contractor intended to waive the pay-if-paid provision).

[18] *Goldsmith*, 307 Ga. App. at 28 (1) (punctuation omitted).