**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13700

_____

CYPRESS INSURANCE COMPANY,

*Plaintiff-Appellee,*

*versus*

JESSE BATTEN FARMS LLC,
JESSE LEE BATTEN,
 individually,

*Defendants-Appellants,*

CALVIN D KING, et al.,

*Defendants.*

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:22-cv-00049-WLS

_____

Before ROSENBAUM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

In August 2020, a semi-truck driven by a Jesse Batten Farms, LLC ("Batten Farms"), employee collided with a sedan, allegedly causing the death of a Georgia father riding in the car's passenger seat. In the face of a wrongful-death lawsuit, Batten Farms sought coverage from its insurer, Cypress Insurance Company ("Cypress"). Cypress denied Batten Farms's claim. In response to continued demands, Cypress sued for a declaratory judgment disclaiming coverage for the incident.

The district court entered summary judgment for Cypress. It held that no genuine dispute existed over whether the truck qualified for coverage as a temporary substitute vehicle under the Temporary Substitute Autos provision of Batten Farms's insurance policy with Cypress (the "Policy"). As the district court saw things, the Temporary Substitute Autos provision applies only if the policyholder is replacing an out-of-commission vehicle titled in its own name. But the truck involved in the August 2020 car crash was replacing a vehicle Jesse Batten *personally* owned.

Defendant-Appellants Jesse Batten and Batten Farms now appeal. To be sure, they concede that the plain language of the Policy forecloses coverage. But they say that doesn't matter because Cypress waived the disqualifying language of the Temporary Substitute Autos provision a few months before the August incident. After one of Jesse Batten's other trucks was totaled, Cypress asked whether Batten Farms planned to use a temporary

replacement vehicle in its stead.  And when it did, Cypress didn't mention the "ownership clause" in the Policy's Temporary Substitute Autos provision.  This question, Appellants argue, waived Cypress's right to deny the claim.

On this record, we disagree.  Because Appellants fail to identify evidence showing Cypress intentionally relinquished its right to enforce the ownership clause, we affirm.

## I.    BACKGROUND

Jesse Batten is a Georgia resident.  He's the sole owner of Batten Farms, a farming and trucking business.  As of 2020, for at least two years, Batten Farms had maintained the insurance Policy that Plaintiff-Appellee Cypress had issued.

The Policy provides liability and other insurance coverage for vehicles that the Policy's "schedule of covered autos" lists. Among others, Batten Farms listed both a 1999 Freightliner Conventional truck ("Accident Vehicle" or "1999 truck") and a 2002 Freightliner FLC120D truck ("Deer Vehicle" or "2002 truck") on the schedule of covered autos until late 2019.  At that point, Batten Farms removed the 1999 truck from the schedule for long-term repairs.

The Policy also provides coverage for "Temporary Substitute Autos."  It defines those vehicles as "[a]ny 'auto' you do not own while used with the permission of its owner as a temporary substitute for a covered 'auto' you own that is out of service

because of its: a. Breakdown; b. Repair; c. Servicing; d. 'Loss'; or e. Destruction."

On May 10, 2020, a Batten Farms employee was driving the 2002 truck, when he swerved to avoid a deer and crashed. Jesse Batten owned that truck, the "Deer Vehicle," personally. But even so, the Policy included the Deer Vehicle on its schedule of covered autos—Batten Farms could list vehicles it owned as well as those others owned.

On May 28, 2020, a senior auto underwriter from Cypress, Jessica Parker, emailed Batten Farms's insurance agent. She told the insurance agent, Tanya Scott of Taylor Insurance Agency, Inc., that Cypress deemed the Deer Vehicle a total loss. Parker also asked Scott whether Batten Farms intended to keep the vehicle and whether it had "use[d] any temporary substitutes while this unit was down." Hearing no response, Parker emailed again on June 5, 2020, to close the inquiry. She requested that Scott let her know once Batten Farms decided its plans about the Deer Vehicle. Parker also noted that Cypress could remove the vehicle from the Policy dating back to the day after the crash "given there were no temporary substitutes."

Scott responded months later, on September 9, 2020. She said that "[t]he insured has called stating that the 2002 Freightliner [Deer Vehicle] which was involved in an accident back [on] 05/10/20 was a total loss." Scott asked that Cypress check whether the Deer Vehicle was indeed a total loss and, "if so[,] remove the truck back to 5/11/2020."

On September 10, 2020, another Cypress underwriter responded to Scott's email. He confirmed that he would remove the Deer Vehicle from the Policy effective May 11, 2020. Cypress sent Batten Farms a check for $4,125.77 as a return premium on September 22, 2020. Batten Farms deposited the check. Cypress also paid $18,435.72 to Jesse Batten for the salvage of the Deer Vehicle.[1]

Between Parker's outreach and Scott's response, tragedy struck. On August 11, 2020, a Batten Farms employee, Calvin King, was hauling a load of corn product when his truck collided with a car driven by Lakista McCuller. Floyd Fillingame was a passenger in McCuller's car. He sustained severe injuries in the crash, and he died the next day. King was driving the Accident Vehicle, which Jesse Batten owned personally. Although it was in driving condition, Batten Farms had not restored the Accident Vehicle to the schedule of vehicles listed on the Cypress Policy.

A long dispute over insurance coverage began the next month. Cypress received notice of the August 11 accident on September 18, 2020. It immediately emailed Scott to say that it couldn't find the Accident Vehicle listed on the Policy. Cypress asked whether Scott was aware of any pending endorsements to add the Accident Vehicle to the Policy or if it was a temporary substitute for a particular scheduled vehicle. Scott responded, "No… I am not aware of any endorsements."

---

[1] The record does not reflect the date of the transaction.

On November 2, 2020, Cypress denied Batten Farms's claim for coverage based on the August accident. Cypress explained that "[t]he involved vehicle was not listed on the Policy schedule as a specified vehicle at the time of the loss" and "was not . . . a temporary substitute for a covered vehicle."

The following year, in November 2021, Fillingame's estate and family members filed a wrongful-death action in Georgia state court against Batten Farms, Jesse Batten, King, and The Scoular Company (the company whose corn product King was transporting on the day of the accident). In early April 2022, counsel for Batten Farms demanded that Cypress tender the maximum $1 million in liability coverage under the Policy, in return for a limited-liability release.

Cypress sued Appellants and all other parties to the state wrongful-death action later that month in federal district court. In its suit, Cypress sought a declaratory judgment that the Policy does not provide coverage for the August 11, 2020, accident. Cypress and Appellants filed cross-motions for summary judgment. The district court granted Cypress's motion for summary judgment and denied Appellants' motion. Appellants now appeal the grant of summary judgment in favor of Cypress.

## II.    STANDARD OF REVIEW

We review de novo a district court's grant of a motion for summary judgment, "viewing the facts in the light most favorable to the nonmoving party." *Gemini Ins. Co. v. Zurich Am. Ins. Co.*, 119 F.4th 1296, 1299 (11th Cir. 2024). Summary judgment is

24-13700               Opinion of the Court                    7

appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.    DISCUSSION

We address Appellants' waiver argument in two parts.[2] First, we review the rules under Georgia law for waiver of insurance-policy conditions. Second, we consider the evidence in the record and conclude that it does not show that Cypress knew that Jesse Batten personally owned the Deer Vehicle at the time of the purported

---

[2] Cypress contends that we shouldn't reach the merits of the waiver argument because (1) Appellants did not explicitly plead waiver as an affirmative defense in their Answers, and (2) Appellants forfeited the issue of waiver by failing to sufficiently litigate it before the district court. We disagree.

First, although failure to plead an affirmative defense will generally waive that defense, we apply "a liberal approach to waiver where the failure to raise an affirmative defense has not prejudiced the plaintiff." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1322 n.4 (11th Cir. 2006). Cypress has not identified any prejudice arising from Appellants' failure to explicitly plead waiver in their Answers.

Second, the district court effectively reviewed the same arguments that Appellants now clothe as a waiver theory. Appellants argued that Parker's emails permitted Batten Farms "to use a temporary substitute for the Deer Vehicle," and Cypress maintained that "Parker never stated that the insured was free to use any temporary substitute auto it wanted regardless of the Policy's terms." And in any case, even if the parties had not litigated the issue before the district court at all, we would exercise our discretion to address it because "the proper resolution is beyond any doubt." *Blue Martini Kendall, LLC v. Miami Dade County*, 816 F.3d 1343, 1349 (11th Cir. 2016) (quoting *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 361 (11th Cir. 1984)).

waiver. That, alone, is enough to decide this appeal in Cypress's favor.

Waiver is an issue of contract law, so we apply the substantive law of Georgia, the principal location of risk insured by the contract. *See Helton v. United Servs. Auto. Ass'n*, 840 S.E.2d 692, 695 (Ga. App. 2020). Georgia courts recognize a party has waived its right to enforce a contractual provision when the evidence shows "an intentional relinquishment of a known right." *Ochoa v. Coldwater Creek Homeowners Ass'n, Inc.*, 863 S.E.2d 730, 733–34 (Ga. App. 2021) (quoting *Greenberg Farrow Architecture, Inc. v. JMLS 1422, LLC*, 791 S.E.2d 635, 640 (Ga. App. 2016)). For a court to infer the waiver of an important contract right from a party's conduct, the waiver must be "clear and unmistakable." *Id.* at 733 (quoting *Greenberg Farrow*, 791 S.E.2d at 640).

Appellants argue that Georgia courts regularly recognize waiver of ownership conditions similar to the one in the Policy. They base this contention on *Christian v. Allstate Insurance Co.*, 239 S.E.2d 328 (Ga. 1977), and a series of related cases. But this line of cases doesn't help Appellants.

To be sure, in *Christian*, the Georgia Supreme Court held that an insurer had waived its right to deny a claim for liability coverage on the basis that a vehicle was titled in the name of an officer of the insured company rather than the company itself. *Id.* at 330. The policy in that case had covered "owned automobile[s]." *Id.* at 329. But the court noted some important conditions. It held that an insurer waives its right when the insurer knows the vehicle is

owned by someone other than the insured and then accepts that risk by determining and collecting a premium on that basis, or more specifically, when

> an insurance company [1] through its own agent has knowledge that the actual title to certain automobiles, to be insured along with other automobiles in a fleet policy, are actually titled in the names of persons associated with the insured rather than in the name of the insured itself; [2] with that knowledge issues a policy of insurance naming the insured as the owner of all of the vehicles described in the policy; and [3] calculates and collects an individual premium with respect to each of said automobiles on that basis . . . .

*Id.* at 330.

Appellants cite three other cases as analogous, all of which confirm the same principle. *See Nationwide Mut. Fire Ins. Co. v. Wiley*, 469 S.E.2d 302, 303 (Ga. App. 1996) (requiring that "the agent has full and actual disclosure of the ownership of the property"); *Ga. Farm Bureau Mut. Ins. Co. v. Burton*, 337 S.E.2d 455, 456 (Ga. App. 1985) (same); *Barnum v. Sentry Ins.*, 286 S.E.2d 445, 448 (Ga. App. 1981) (same).

Then they suggest that even "small circumstances" are enough to show waiver here. *Hoover v. Maxum Indem. Co.*, 730 S.E.2d 413, 418 (Ga. 2012) (quoting *Norfolk & Dedham Mut. Fire Ins. Co. v. Cumbaa*, 196 S.E.2d 167, 169 (Ga. App. 1973)). They urge that this easier standard applies instead of a clear-and-unmistakable-waiver requirement because the Policy's ownership clause is a

"non-essential part[] of an insurance contract" and "penal in nature." *Id.*

Appellants misread the case. *Hoover*'s language comes from a long line of decisions construing post-loss requirements such as notice provisions. *See Norfolk & Dedham*, 196 S.E.2d at 169 (citing *N.Y. Underwriters Ins. Co. v. Noles*, 115 S.E.2d 474, 476 (Ga. App. 1960)). *Noles* applies the "small circumstances" language to "conditions which are to be performed after loss, such as furnishing proofs of loss and giving notice." *Noles*, 115 S.E.2d at 476. But that shoe doesn't fit here. Georgia courts treat conditions that define the scope of coverage or trigger an obligation to pay as important contractual rights that require a clear and unmistakable waiver. *See Vratsinas Const. Co. v. Triad Drywall, LLC*, 739 S.E.2d 493, 496, 498 (Ga. App. 2013); *cf. Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 548 S.E.2d 67, 69 (Ga. App. 2001) (discussing an insurance policy's "essential provisions which fix, create, limit, or enlarge liability"). And the ownership clause in the Temporary Substitute Autos provision helps define the scope of property that the Policy covers, so it fits squarely into the category of provisions that define the scope of coverage or trigger an obligation to pay.

Still, Appellants contend that Cypress waived the ownership clause when Parker sent her emails to Scott on May 28 and June 5. The emails are short, so we reproduce the substantive paragraphs in full. In the May 28 message, Parker said that the Deer Vehicle had been "deemed a total loss" and asked,

> Is the insured planning to keep the unit?  If so, what
> are their intentions with the unit?  If they do not plan
> on keeping it, did they use any temporary substitutes
> while this unit was down?  The soonest we would be
> able to remove the unit from the policy is the date
> after the loss (5/11/2020).

As for Parker's June 5 message, it says,

> I am following up on the total loss.  We haven't had a
> response regarding the status.  I am going to close this
> follow-up.  Once the insured has decided what they
> will be doing with the total loss please advise.  If they
> are not keeping the unit we will be able to remove the
> unit back to after the date of loss given there were no
> temporary substitutes.

Neither email suggests that Cypress or Parker, its agent, knew that
Jesse Batten owned the Deer Vehicle personally.  Under the rule
from *Christian*, that lack of knowledge is fatal to Appellants' waiver
theory.

Appellants make a few unavailing attempts to resist this con-
clusion.  First, they point to Parker's declaration from 2024.  There,
she characterized her 2020 emails as giving Batten Farms two op-
tions, including "(ii) keep the Deer Vehicle on the Policy with Cy-
press retaining the resulting premium and the ability to use a tem-
porary substitute vehicle."  But we don't see how that helps Appel-
lants.  An admission that keeping the Deer Vehicle on the Policy
would allow Batten Farms to use a temporary substitute might be
meaningful *if* Parker knew that Batten Farms didn't own the

vehicle. But that's the fact Appellants haven't established. And while Parker declared, "I am familiar with a May 10, 2020, accident involving a 2002 Freightliner . . . [that] was owned by Jesse Lee Batten individually," this statement is in the present tense. So it reflects only her knowledge in 2024—after the incident.

Second, Appellants assert that Parker's failure to cite the ownership clause in either email means that ownership was a "matter of indifference." But parties to a contract need not restate every contractual condition whenever they communicate. *Cf. AAF-McQuay, Inc. v. Willis*, 707 S.E.2d 508, 520–21 (Ga. App. 2011) (discussing "protracted silence" that can sometimes make waiver an issue for the factfinder). And we don't see how we can view Parker's failure to restate the ownership requirement in her emails as a "clear and unmistakable" waiver of it.

Finally, Appellants suggest that Cypress must have learned about the Deer Vehicle's ownership when it prepared paperwork to purchase the salvage of the truck. But the date of that transaction is unclear from the record. So Appellants can't use it to show that Cypress or its agent knew the Deer Vehicle's actual ownership by June 5, 2020.

Appellants look towards another line of cases for a variation on their waiver argument. Specifically, they invoke *Barwick v. General American Life Insurance Co.*, 324 S.E.2d 758 (Ga. App. 1984). As Appellants see things, *Barwick* establishes that an insurer waives a condition when it "continu[es] to assume the *same* risk for the *same* premium where it had grounds to reduce both" because the

24-13700                Opinion of the Court                13

policyholder didn't satisfy the condition.  So, they contend, Cypress waived the ownership condition by continuing to accept Batten Farms's premiums after totaling the Deer Vehicle and purchasing the salvage.  But the facts don't support this premium-acceptance theory, either.

*Barwick* involved a life-insurance policy that, by its terms, reduced the amount of coverage and the monthly premium when the insured person turned 65 years old.  *Id.* at 759.  But the insurer continued to accept the full, original premium after the plaintiff's husband reached 65.  *Id.*  Her husband died the next year.  *Id.*  The court held that the insurer had waived the age-based reduction in coverage by accepting the full premiums.  *Id.*  *Barwick*, in turn, was based on an earlier case with similar facts, *American Home Mutual Life Insurance Co. v. Harvey*, 109 S.E.2d 322 (Ga. App. 1959).  The court in *Harvey* held that an insurer waived its exclusion of coverage for people older than 65 by accepting premiums from a 65-year-old man.  *Id.* at 324–25.

But Appellants' premium-acceptance argument fails for the same reason that their main waiver theory does.  In both *Barwick* and *Harvey*, the "insurers knew, when they accepted the monthly premiums, that the insured was over 65 years of age." *Barwick*, 324 S.E.2d at 759; *see Harvey*, 109 S.E.2d at 324.[3]  In other words, the

---

[3] *Barwick* also notes that both it and *Harvey* feature insurance policies for which "monthly acceptance of the premium constituted a renewal of the policy." *Barwick*, 324 S.E.2d at 759.  Appellants do not suggest that this is true of the Policy in this case.

14                    Opinion of the Court                    24-13700

insurer accepted the premiums while knowing that the insured didn't satisfy the condition in question. But here, again, Appellants come up short. The record doesn't establish when Cypress purchased the salvage or when it drew the final premium for the Deer Vehicle. It does show that Cypress refunded the post-incident premiums on September 22, 2020. But we see no basis to conclude that Cypress knew when it accepted the premiums that Batten Farms didn't own the Deer Vehicle. So Appellants' premium-acceptance theory goes no further than the one based on Parker's emails.

## IV.    CONCLUSION

On this record, no genuine dispute exists that Cypress did not knowingly waive its right to enforce the Temporary Substitute Autos provision's ownership clause. So we affirm the district court's decision to grant summary judgment to Cypress.

**AFFIRMED.**